STATE ex. rel. M. N. PETTY v. J. O. ROUSSEAU, Adm'r, et al.

*Infant—Contracts Executory and Executed—Verdict—Transferable Demands—Party in Interest.*

1. Where an infant sold his claim against his guardian for a present consideration, and promised to give a receipt for it when he became of age, it is an executed, and not an executory contract.

2. Where an infant enters into an executory contract, express confirmation or a new promise after coming of age, must be shown in order to bind him ; but where the contract is executed, ratification may be inferred from circumstances, and any acknowledgment of liability, or holding the property and treating it as his own, will amount to such ratification.

3. The Clerk has no right to take the verdict of a jury in the absence of the Judge, unless expressly authorized by the Court to do so.

4. Where, without authority, the Clerk took a verdict in the absence of the Judge, which was irresponsive to the issues, the Judge has the power to order the jury to retire and find another verdict, they not having dispersed, and there being no allegation that they have been tampered with.

5. Any claim or demand can be transferred, and the assignee maintain an action on it in his own name, except when it is to recover damages for a personal injury, or for breach of promise of marriage, or when it is founded on a grant made void by statute, or when the transfer is forbidden by statute, or when it would contravene public policy.

6. The share of an infant in an estate in the hands of his guardian is capable to being assigned, and when so assigned, the assignee and not the infant is the proper relator in an action on the guardian bond.

*(Turner* v. *Gaither,* 83 N. C., 357 ; *Alexander* v. *Hutchison,* 1 Dev., 13, *Skinner* v. *Maxwell,* 68 N. C., 45 ; *Wright* v. *Hemphill,* 81 N. C., 33 ; *Willoughby* v. *Threadgill,* 72 N. C., 438 ; *Robeson* v. *Lewis,* 73 N. C., 107 ; *Houston* v. *Potts,* 63 N. C., 41 ; *Garrow* v. *Maxwell,* 6 Jones, 529, cited and approved).

CIVIL ACTION, tried before *Graves, Judge,* and a jury, at Fall Term, 1885, of the Superior Court of WILKES county.

The action was brought on the guardian bond of Benjamin F. Petty, against the defendant J. O. Rousseau as his administrator, and against A. L. Rousseau as his surety to said bond. B. F. Petty was appointed guardian of the relator and his brother and sister, who were infants, on the 16th day of July, 1861, and it was alleged there were some funds in the hands of the guardian, who was dead, due to his wards.

The defendant denied, at first, the execution of the bond. He also denied that there was anything due to the relator from his guardian ; and as a further defence pleaded that the relator had no right to maintain this action, for the reason he had parted with his interest, if he ever had any, in the subject of the action, before its institution ; and that the claim was barred by the statute of limitations, or presumed to be paid by lapse of time.

The following issues were submitted to the jury :

1st. Did defendant J. O. Rousseau's intestate and A. L. Rousseau, execute the bond sued on, as alleged?

2nd. Did the plaintiff assign his interest in the bond sued on to F. Doughton, or to any one, before the bringing of the suit, and did he, plaintiff, have any interest therein at the bringing of this action?

3rd. Had three years elapsed after the plaintiff came to the age of twenty-one years, before this action was brought?

The execution of the bond was admitted as alleged in the complaint, and that the action was brought within three years after the relator became of age.

One C. H. Doughton was introduced as a witness for the defendant, and it was proposed to show by him, that the relator, M. N. Petty, had sold all of his interest in the subject of the action, to F. S. Doughton, before the action was begun, and the relator had no interest in the matter in suit. The plaintiff objected to the evidence, but it was admitted by the Court, and the plaintiff excepted. The witness then testified, in substance, that Fleming Doughton was his son, and he married the sister of the relator, that after the death of R. F. Petty, M. N. Petty proposed to sell

to F. S. Doughton, his interest in his mother's estate, that had come into the hands of his father, B. F. Petty, as his guardian. Doughton said, "you are not of age, and cannot give a receipt." Petty said "he would sign when he came of age." They traded. Petty said "he would rather have a little now, than more here-after." Witness could not recollect the price agreed on, but when Petty started to his home in Wilkes, Doughton let him have, in part payment, a mare and some money, and he thinks a mule, and after that Doughton paid him some more money on their trade, and after that Doughton bought the mare back, and paid him the money for her. The trade took place he thought in 1876, 1877, or 1878, but did not exactly remember when.

One Laxton testified, that the relator left the county of Wilkes in the Fall of 1881, and told him that he had sold all of his interest that came from his mother's estate to F. S. Doughton, and that he took stock for it; that he told him the same thing several times.

One Parks testified, that several years ago, the relator came to his father's house, and brought a bay mare and a mule, and a bridle and saddle, and said he had sold out to Doughton—that he traded the mare for a horse, and made a crop with it; does not know what he did with the horse, he swapped the mule for a horse, and witness bought the horse from him. Witness further stated, that he heard a conversation between the relator and witness's mother, in 1880. They were speaking about his property. She said, "You have sold out your interest to your brother Flem," (that is F. S. Doughton). He said, "Yes, but when a man sees he can get anything he wants it;" that he had a conversation with him, and he said the same thing. Witness stated that he swapped with Petty for a sorrel horse, which he had swapped another horse for. Does not know when relator came back from Alleghany, but it was two years before he swapped horses.

Parks, a witness, testified that the relator was born on the 12th of March, 1858. Relator told him that he had sold out

to his brother Flem.   He then had a bay filly and a mule; he swapped the mule for a horse, and made one or two crops with it.   In 1878 or 1879, he bought a large sorrel horse, which he said he got from F. S. Doughton, and had him for two years before he left the State in the fall of 1881.   He did not know what he gave for the horse or how he paid for him.

The plaintiff asked the Court to instruct the jury: "That there was no evidence to show a sale, unless it was to F. S. Doughton, in 1876, when the plaintiff was an infant, and that at most, there was only an agreement to assign his interest when he became of age, and that was an executory contract, and that there was no evidence, or no sufficient evidence, to authorize the jury to find that he ever ratified the same."   The instructions asked for were not given as asked for.   The substance of the instructions given to the jury was reduced to writing and read to the jury as follows:

"When you come to consider the second issue, it will be the duty of the defendants to show you, by a preponderance of evidence, that the relator of plaintiff had parted with his interest in the subject matter of this action, before it was begun.   There is no evidence of any sale by the relator, unless it was to F. S. Doughton.   A contract is only binding between parties competent to contract.   The contracts of an infant are not absolutely void, but they are voidable, that is to say, although an infant may make a contract, he may, when he becomes of full age, avoid it, and set it aside, or he may affirm it after he becomes of age.   Direct and express affirmation must be shown, if the contract is executory.   If the contract is an executed contract, the affirmation may be inferred from circumstances."

After having read this, the Court added orally :

"If, at the time of the alleged contract between the relator and F. S. Doughton, the relator was not then twenty-one years old, he was an infant, and if he made a contract, it would not be binding, unless it was affirmed after he became twenty-one years old.   You will inquire, then, whether there was a contract made,

and whether it has been affirmed. If you find that a contract was made, was it an executory contract, or an executed one? An executory contract is one not yet completed and finished, but something yet remains to be done. If the relator of the plaintiff agreed with F. S. Doughton that he would sell him his interest when he became of age, this would be an executory contract, and to make it binding on the relator of the plaintiff, then it would be necessary for the defendants to show a direct and express ratification of the agreement after the relator became of age. An executed contract is one in which nothing more remains to be done to complete the trade. If the relator sold his interest in the subject matter of this suit to F. S. Doughton, and received the pay for it, then it was an executed contract, and if the trade was so completed, it would still be an executed contract, if the relator promised to give his receipt for the money after he became of age. If you find the contract was an executed contract, made by the relator when an infant, it is still one he may set aside, unless he has ratified it. The affirmance of an executed contract made by an infant, may be shown by circumstances occurring after he arrives at full age. So here, if the contract was executed, and the relator kept the property which he had received, for an unreasonably long time after he became of age, and used it as his own, the jury may infer that he ratified the contract; but if he had parted with, or wasted it before he became of full age, or offered to return it, no such inference can be drawn. In order to authorize the jury to infer an affirmance of the contract, the circumstances must show it."

To the refusal to give the instructions asked for, plaintiff excepted. To the instructions given, the plaintiff excepted.

This case was given to the jury late in the evening, and they had not returned their verdict when the Court took a recess for the day. Between eight and nine o'clock that night, the jury returned their verdict to the Clerk, in the absence of the Judge—counsel on both sides being present—and were discharged by the Clerk. In this verdict they found "yes" to the first issue, and "no" to the second and third issues.

Upon the opening of Court the next morning, one of the jurors, who sat upon the case, applied to the Court, and was discharged from further service. The Judge then asked to see the verdict in this case, as returned by the jury the night before, and upon reading the same, asked if the juror just discharged "was one that sat upon the trial of this case," and upon being informed that he was, had him called back in the jury box, with the other jurors. He then stated that the responses to the issues were confused, and not fully responsive. He then proceeded to call the attention of the jury to the issues, and pointed out in what respect the finding was not fully responsive, and submitted the issues to them, telling them to retire and find how the matter was.

The plaintiff objected to the case being submitted to the jury again, and excepted to the action of the Court in doing so.

The jury, after being out a short time, returned their verdict, finding the first issue in the affirmative. In response to the second issue, they found that the relator "had sold to Doughton, and had no interest at the beginning of the action." The third issue was responded to in the negative.

There was a motion for a new trial. The motion was overruled, and judgment against the plaintiff, from which he appealed.

*Mr. D. M. Furches*, for the plaintiff.
*Mr. C. B. Watson*, for the defendants.

ASHE, J. (after stating the facts). The record presents four questions for our consideration.

1. Was there error in the refusal of the Court to give the instructions asked by the plaintiff?

2. Was there error in directing the jury to reconsider their verdict and make it responsive to the issues?

3. Did M. N. Petty have the right to maintain the action as relator?

4. Was there error in the charge given by the Court to the jury?

Our opinion is, there was no error in the refusal to give the instructions asked by the plaintiff, nor in the instructions given by the Court. These exceptions, the first and fourth, will be considered together, as they involve the same questions.

The instructions asked, are predicated upon the fallacious assumption, that the contract made by the relator and F. S. Doughton was executory, and the relator being an infant at the time, there was not sufficient evidence to warrant the jury in coming to the conclusion that there was a ratification by the relator, after he became of age. But the evidence in the case is plenary, that the relator, while under age, sold to Doughton all his interest in his mother's estate, which had come to the hands of B. F. Petty as his guardian. There was no evidence that he would sell or assign this interest when he reached his majority, but the sale was absolute and for a consideration, for which he agreed to give a receipt for when he became of age. It was therefore an executed contract, and the principle applicable to the ratification of such a contract, is different from that which applies to an executory contract. His Honor, we think, clearly laid down the distinction in his charge to the jury, when he said: " Direct and express affirmation must be shown, if the contract is executory. If the contract is an executed contract, the affirmation may be inferred from circumstances," and in this he is fully supported by very high authority. Mr. Greenleaf lays it down, that " there is a distinction between those acts and words which are *necessary* to ratify an executory contract, and those which are *sufficient* to ratify an executed contract. In the latter case, any act amounting to an explicit acknowledgment of liability, will operate as a ratification; as in the case of a purchase of land or goods, if after coming of age, he continues to hold the property and treats it as his own. But in order to ratify an executory agreement, there must not only be an acknowledgment of liability, but an *express confirmation* or new promise, voluntarily and deliberately made by the infant, upon his coming of age, and with the knowledge that he is not legally liable. 2 Greenleaf Ev. §367 ; *Turner* v. *Gaither*, 83 N. C., 357.

The charge of his Honor is further well supported by the decision of this Court in the case of *Alexander* v. *Hutchison*, 1 Dev., 13, where it is held by TAYLOR, C. J., and HALL, Judge, that it should be left to the jury to determine whether they could infer from the defendant's behavior, a clear and unequivocal assent to, and ratification of the contract. "It may be by *words,* it may be by *signs* or *acts*—anything which shows an acquiescence, or an *assent* of the parties' mind is sufficient." *Skinner* v. *Maxwell*, 68 N. C., 45. Here the relator received the consideration of the contract, which consisted of a horse, mule, bridle and saddle, and money, which from aught that appears, he never returned, and after the sale he admitted to different persons that he had sold his interest in his mother's estate to F. M. Doughton. He admitted the same thing, after he became of age, to Mrs. Parks, and her son, J. F. Parks, in 1880, and to Romulus Laxton, in the fall of 1881, and never expressed any regret or dissatisfaction with the sale.

Upon this evidence, the jury were well warranted in finding there was a ratification of the contract. The agreement to give a receipt after he became of age, formed no part of the contract of sale. That was only to be given as evidence of the receipt of the consideration.

The next question presented by the exceptions of the defendant·is, was there error in directing the jury to reconsider their verdict, and accepting their verdict as reformed. When the Court took a recess for the day, it was getting late at night, and the Judge left the bench without authorizing the Clerk to receive the verdict. The Clerk then had no right to receive it in his absence, and even if he had directed the Clerk to receive it, it was competent for him after his return, if the verdict was not responsive to all the issues, and the jury being in Court, and there being no suggestion of tampering, or other improper influence, to order them to retire and render a proper verdict upon the issues, in the same manner as verdicts rendered in open Court. *Wright* v. *Hemphill*, 81 N. C., 33; *Willoughby* v.

*Threadgill,* 72 N. C., 438 ; *Robeson* v. *Lewis,* 73 N. C., 107. " Calling the jury again into the box, and instructing them to render a verdict responsive to the issues, was a matter within the discretion of the Judge." *Willoughby* v. *Threadgill, supra.* The Judge had the right to take that course, or discharge the jury, as he might deem most advisable. *Houston* v. *Potts,* 63 N. C., 41, but in that case it does not appear that the jury were in Court when the verdict was set aside ; for aught that appears they may have been discharged, and were dispersed.

The remaining question to be considered is: Did M. N. Petty have the right to maintain the action as relator; and we are of opinion he had not the right. The evidence in the case, as we hold, was sufficient to warrant the jury in finding the fact that the relator had transferred his interest to Doughton, and the first inquiry in this connection is, was the interest of the relator such a right as might be assigned. The Code, §177, which provides that every action must be prosecuted in the name of the real party in interest, except as otherwise provided, and in case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off &c., is a literal copy of a similar section in the New York Code. And Mr. Bliss, in his Annotated Code, 2 vol., 270, in commenting on this section of the Code, thus lays down the rule with regard to what is or is not assignable :

" Any claim or demand can be transferred, except in one of the following cases : 1st. When it is to recover damages for personal injury, or for a breach of promise to marry. 2d. When it is founded upon a grant which is made void by a statute of the State, or upon a claim to or interest in real property, a grant of which, by the transferror, would be void by such statute. 3rd. Where the transfer thereof is expressly forbidden by a statute of the State or of the United States, or would contravene public policy."

The assignment in our case does not fall within either of these prohibited classes, and according to this very high authority, the claim of M. N. Petty was an assignable interest, and having been

assigned, he no longer had any interest in it. All that he had was transferred to Doughton, who was the real party in interest, and was the only person, under The Code, §177, who could maintain the action. It was so held in New York, in the case of *Sheridan* v. *Meyer*, 68 N. Y., 130, which was a case involving a similar question under the Code of that State, and it was there held, that, "A plaintiff suing upon an assigned claim, is the real party in interest under the Code, if he has a valid transfer against the assignor, and holds the legal title to the demand: the defendant has no legal interest to inquire whether the transfer was an actual sale or merely colorable, or whether a consideration was paid therefor."

In this State, before the adoption of The Code, it was held by this Court, PEARSON, C. J. delivering the opinion, that when a constable had a judgment for collection, and failing to collect, paid the amount of the judgment to the plaintiff therein, and then put the judgment in the hands of another constable for collection, the first constable had the right to maintain an action as *relator* on the bond of the second constable. *Garrow* v. *Maxwell*, 6 Jones, 529, and this was put upon the ground, that the first constable was the purchaser of the judgment—in other words, was the assignee of the judgment. And if under the law as it then existed, the assignee in such a case, had the right to sue as relator, *a fortiori* would he have that right under The Code §177, which expressly provides that "every action must be prosecuted in the name of the real party in interest."

Our conclusion is, there is no error, and the judgment of the Superior Court must be affirmed.

No error.                                          Affirmed.