FLETCHER v. A. W. KOCH CO. (No. 5676.)

(Court of Civil Appeals of Texas. Austin. Nov. 1, 1916.)

1. INFANTS ⨺57(1)—CONTRACT OF INFANT—RATIFICATION.

A contract made by a minor, except for necessaries, is not binding upon him, unless made so by such conduct as will create an estoppel, or by a ratification after the disability of minority has ceased to exist, such contracts not being absolutely void, as they may be ratified after majority.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 136–143, 145–148, 151; Dec. Dig. ⨺57(1).]

2. INFANTS ⨺57(2)—FAILURE TO DISAFFIRM CONTRACT—PRESUMPTION OF RATIFICATION.

Where a minor contracted to buy a lot and pay in installments, but title remained in the seller, and it was not made to appear that the minor's failure to repudiate the contract sooner than 8 months after he reached majority resulted in any injury to the seller, the minor's failure to disaffirm sooner created no presumption of ratification.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 144; Dec. Dig. ⨺57(2).]

3. INFANTS ⨺57(1)—RATIFICATION OF CONTRACT—EXPRESS PROMISE.

If a minor, after reaching majority, with full knowledge of the fact that his previously made contract is not binding on him, declares to the other party that he adopts it or intends to abide by it, such conduct is a ratification without a specific promise to perform.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 136–143, 145–148, 151; Dec. Dig. ⨺57(1).]

4. INFANTS ⨺57(1)—CONTRACTS OF MINORS—"RATIFICATION."

As applied to the contracts of minors, "ratification" means that the late minor, knowing his contract is not binding on account of his minority when he made it, determines in his own mind to waive that defect and adopt the contract, and signifies his intention by such spoken or written words, or other conduct, as will render it manifest.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 136–143, 145–148, 151; Dec. Dig. ⨺57(1).

For other definitions, see Words and Phrases, First and Second Series, Ratification.]

5. INFANTS ⨺57(1)—RATIFICATION OF CONTRACT—PROOF.

Unless a minor's words or acts after reaching majority make it clearly and distinctly appear that he intends to ratify his previously made contract, they are not sufficient proof of ratification.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 136–143, 145–148, 151; Dec. Dig. ⨺57(1).]

6. WORDS AND PHRASES—"RATIFICATION."

To constitute a "ratification" or confirmation of something previously done, it must appear that the party charged with having ratified or confirmed the transaction, at the time he committed the acts tending to show such confirmation, knew that the former transaction was not binding upon him.

7. INFANTS ⨺98 — RATIFICATION OF CONTRACT—KNOWLEDGE OF VOIDABLE CHARACTER—PROOF.

The fact that a minor, who is claimed to have ratified his previously made contract after attaining majority, had knowledge that it was not binding upon him, may be shown by circumstantial evidence.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 293; Dec. Dig. ⨺98.]

8. INFANTS ⨺57(2) — RATIFICATION OF CONTRACT—KNOWLEDGE OF VOIDABLE CHARACTER—LAPSE OF TIME.

The mere fact that 4 months elapsed between the time a minor attained his majority and when he wrote a letter claimed to constitute a ratification of his previously made contract did not justify a finding that he knew that the contract was not binding on him when he wrote the letter.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 144; Dec. Dig. ⨺57(2).]

9. INFANTS ⨺57(1)—CONTRACT TO BUY LAND—RATIFICATION.

·Where an infant, who contracted to buy a lot and to pay in installments, 2½ months after he reached majority wrote to the seller, stating that it appeared from the contract of purchase that he had agreed to pay taxes after a certain date, and requested the seller to notify him promptly as to the amount due on the property for the year, and to advise him whether he should remit the money to pay such taxes to the tax collector or to the seller, such letter was not a ratification of his contract to buy.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 136–143, 145–148, 151; Dec. Dig. ⨺57(1).]

Appeal from District Court, McLennan County; E. J. Clark, Judge.

Suit by B. J. Fletcher against the A. W. Koch Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Boggess & Naman, of Waco, for appellant. Stribling & Stribling, of Waco, for appellee.

KEY, C. J. Appellant brought this suit against appellee for the rescission of a contract for the purchase by appellant of certain real estate from appellee. The ground relied on for rescission was the fact that ap-

pellant was a minor under the age of 21 years at the time the contract was made. The trial judge filed the following conclusions of fact and law:

"Conclusions of Fact.

"(1) On the 24th day of June, 1912, B. J. Fletcher, plaintiff, entered into a contract with A. W. Koch & Company to purchase from A. W. Koch & Company, lot 13, block No. 17, as shown on the plat of Highland Place, being an addition to the city of Waco, Texas, for the consideration of $12.50 cash, and the further sum of $12.50 on the first day of each succeeding month thereafter until the total sum of $300 has been paid, and the further consideration of two notes for $225.00 each, due June 24th, 1915 and June 24th, 1916, respectively.

"(2) That in the first clause of said contract, it is provided that A. W. Koch & Company agreed to pay all state and county taxes on said property up to and including the year 1913.

"(3) That said contract was signed by the parties on the date it bears, and the plaintiff paid a cash consideration of $12.50 and also $12.50 on the first of each succeeding month until he had paid the sum of $300 under said contract.

"(4) That plaintiff executed his two notes for $225 each, payable to A. W. Koch & Co., as provided for in the contract, and same were delivered to payee therein contemporaneously with the execution of said contract.

"(5) That the lot described in the contract was, and is now, unimproved, being vacant property.

"(6) That plaintiff, at the time of the execution by him of the notes and contract referred to, was a minor.

"(7) That the plaintiff reached his majority on November 3, 1914.

"(8) That on January 16, 1915, plaintiff, then being at Lexington, Tex., addressed the following letter to A. W. Koch & Co., Waco, Texas: 'Gentlemen: From my purchase contract on lot No. 13 of block 17 of Highland Place addition, it appears that I am to pay state and county taxes on the lot hereafter. Please let me know promptly the amount of the state and county taxes due on this lot for the year 1914, and also advise me whether I shall remit to you or to the county tax collector.' That this letter· was received by defendant, and on January 18, 1915, defendant wrote plaintiff the following in reply: 'Dear Sir: Replying to your favor of the 16th inst. beg to advise that the taxes on your lot in Highland Place addition was paid by us for last year.' Which letter was received by the plaintiff.

"(9) That the contract referred to by plaintiff in his letter of January 16, 1915, was the contract of purchase above referred to of date June 24, 1913, and that plaintiff had reference to clause 1 of the contract as provided for the payment of taxes.

"(10) That plaintiff, by said letter, expressed a willingness and intention to carry out the contract as made by him under date June 24, 1913.

"(11) That the taxes as paid by the defendant on the lot referred to were paid by the defendant as a matter of convenience for the plaintiff and other purchasers of lots in that addition who had similar contracts, and for the reason that the entire property was assessed to defendant as acreage property, and not assessed to the purchasers under the several contracts, and the taxes so paid by the defendant for the plaintiff were charged to plaintiff's account in the regular course of dealings.

"(12) That the plaintiff at no time between November 3, 1914, and about July 3, 1915, either by word or act, denied his liability under the contract and notes, or in any way undertook to disaffirm the same to the defendant.

"(13) That the first of said notes became due June 24, 1915, and about that date plaintiff came to Waco from Lexington, Tex., and conferred with W. W. Naman, attorney at law, as to his liability on the notes and his right to recover the amount paid by him under the contract.

"(14) That on or about July 3, 1915, W. W. Naman notified defendant that plaintiff denied liability on the notes and contract, and would sue to recover the sum of $300 paid by him under the contract, unless same was repaid without suit, claiming that he was not bound by the contract, by reason of his minority at the time same was executed.

"(15) This was the first information or notice defendant had of plaintiff's minority, and denial of liability by reason thereof, on the contract and notes.

"(16) That this suit was instituted on the 29th day of July, 1915.

"(17) That from November 3, 1914, to July 3, 1915 (the latter date being the time when plaintiff first notified defendant of his intention to disaffirm the contract), was not, under all the facts and circumstances in evidence, a reasonable time to disaffirm the contract, but plaintiff delayed an unreasonable time before disaffirming the contract.    E. J. Clark.

"Conclusions of Law.

"From the foregoing facts the court concludes as a matter of law:

"1. That there was an expressed ratification and affirmance of the contract entered into by the plaintiff and A. W. Koch & Co., after plaintiff reached his majority.

"2. That having expressly ratified and affirmed the contract as of date January 16, 1915, as shown by plaintiff's letter set forth in the statement of facts, the plaintiff was estopped from thereafter disaffirming the same.

"3. That under all the facts and circumstances in evidence, as shown by the findings of fact, the plaintiff did not disaffirm the contract within a reasonable time after he reached his majority.

"4. That the plaintiff is not entitled to recover the amount paid by him under the contract, and is not entitled to have the notes, executed by him under the contract, canceled and delivered up, as prayed for.

"5. That judgment should be rendered for the defendant."

Opinion.

[1, 2] By his brief, and by oral argument of his counsel when the case was submitted in this court, appellant challenges the correctness of the trial court's conclusions of law, and asks a reversal of the case on account of such alleged error. We have reached the conclusion that, in the main, the contentions urged on behalf of appellant are sound, and require a reversal of the judgment. That a contract made by a minor, except for necessaries, is not binding upon him unless made so by such conduct as will create an estoppel, or by a ratification after the disability of minority had ceased to exist is a proposition of law too well established to require citation of authorities. It is true that such contracts are not absolutely void and they may be ratified by the minor after his minority ceases. It is also true that some authorities seem to teach the doctrine that the minor's failure to disaffirm or repudiate the contract within a reasonable time after reaching his majority will render the same binding upon him. Other authorities hold that the doctrine referred to should be

limited to executed contracts and that it has no application to those where the contract is executory such as the one involved in this case. Whether or not the mere failure to disaffirm or repudiate within a reasonable time will render an executed contract binding is not involved in this case, and we express no opinion upon that subject. The contract here involved is executory, The title to the property, which was the subject-matter of the contract, is still in the appellee, and it was not made to appear that appellant's failure to sooner repudiate the contract has resulted in any injury to appellee, and therefore we hold that appellant's failure to sooner disaffirm and demand for rescission created no presumption that the plaintiff intended to ratify and be bound by the contract. He disaffirmed in about 8 months after he reached his majority.

[3-5] The trial court seems to have regarded the letter written by the plaintiff to the defendant, 2½ months after he reached his majority, as an express ratification of the contract; and, if that conclusion is correct, the case was properly decided. In fact, ratification may be shown without proving an express promise to fulfill the obligations of the contract. If the minor, after reaching the age of majority, and with full knowledge of the fact that the contract is not binding upon him, declares to the other party that he adopts it, or intends to abide by it, such conduct on his part would constitute a ratification without a specific promise to perform the several obligations of the contract. In other words, as applied to this class of contracts, ratification means that the late minor, knowing that the contract is not binding upon him on account of his minority at the time he made it, determines in his own mind to waive that defect and adopt the contract, and signifies such intention by such spoken or written words or other conduct as will render such intention manifest. He may do or say things that are consistent with such intention, and therefore, by implication, such conduct may tend to prove the existence of an intention to ratify. But unless such acts or words make it clearly and distinctly appear that such intention to ratify existed, they do not constitute sufficient proof of ratification.

Few, if any, law-writers have ever ranked higher than Mr. Parsons, and he states the rule upon the subject of confirmation of contracts made by infants in the following language:

"As the liability of an infant is defeated by the law for his protection, therefore when he is of full age he may ratify and confirm a contract entered into by him during infancy, and this by parol; but for this ratification a mere acknowledgment that the debt existed, or that the contract was made, is not enough. It need not be a precise and formal promise, but it must be a direct and express confirmation, and substantially—though it need not be in form—a promise to pay the debt or fulfill the contract. It must be made with the deliberate purpose of assuming a liability from which he knows he is discharged by law, and under no compulsion, and to the party himself or his agent." 1 Parsons on Contracts, 270.

The rule thus stated is believed by this court to be correct. In fact, our research has failed to discover any criticism of the rule thus announced; but we have found much diversity of opinion as to what will constitute ratification or confirmation of a contract made during infancy. Some courts hold that a mere failure to disaffirm after arriving at the age of majority will not constitute a ratification, unless such failure covers the period of time necessary to bar an action for rescission of the contract. Others do not go to that extent, but there is no difference of opinion upon the proposition that if the late minor is obtaining any benefit under the contract, he must, by affirmative action, disaffirm within a reasonable time after his minority ceases.

There is also divergence of opinion as to the effect to be given to payments required of the minor by the contract and made by him after his minority has ceased, the seeming weight of authority being that such payments do not constitute sufficient proof of ratification of the contract. In Rapid Transit Land Co. v. Sanford, 24 S. W. 587, it was held by the Fifth Court of Civil Appeals: (1) That the infant who purchases land and gives his monthly installment notes for the price may, on becoming of age, rescind the contract and recover what he has paid thereon; (2) that the fact that he pays two of the notes within four months after becoming of age is not, of itself, a ratification of the contract; (3) that disaffirmance within four months after becoming of age is within a reasonable time.

The authorities also differ upon the question as to whether or not it is necessary for the proof to show that at the time the former minor committed the acts relied upon as proof of ratification he knew the fact that the contract was voidable and not binding upon him, unless he adopted or ratified it. In dealing with that question some courts hold that all persons not resting under a disability will be presumed to know their legal rights, and therefore it is not necessary to prove that the former minor knew that the contract was not binding upon him when he committed the acts relied on as showing ratification thereof. Both Cyc. and Am. & Eng. Ency. Law approve that as the sounder rule, while the able authors of the notes to Craig v. Van Bebber, 18 Am. St. Rep. 706, and Tobey v. Wood, 25 Am. Rep. 30, express the view that the converse doctrine announced by other courts is better supported by reason.

[6] It is well settled, both by reason and authority, that in order to constitute a ratification or confirmation of something which has been previously done, it must appear that the party charged with having ratified or confirmed the transaction, at the time he com-

mitted the acts tending to show such confirmation, knew that the former transaction was not at that time binding upon him. In other words, applying that rule to this case, appellant must have intended to adopt or ratify the contract so as to make it binding upon him; and, in order to have such intention, he must at that time have known of the defect in the contract, and that it was not binding upon him. An intention to ratify cannot exist in the absence of knowledge of a necessity for ratification; and, this being the case, it would seem to be immaterial whether the fact, knowledge of which is essential to constitute ratification, constitutes a proposition of law, or some other fact disconnected from the law. The expression that all persons are presumed to know the law is often misleading, as is shown by our Supreme Court in Stooksbury v. Swan, 85 Tex. 572, 22 S. W. 966, where the court, speaking through Mr. Chief Justice Stayton, said:

"It is said that every sane person who has reached years of discretion is presumed to know the law; but it is not meant by this that an inference is to be drawn that such persons do actually know the law of the land in which they live. The expression is misleading, for there is no inference based on probabilities that any such knowledge exists; but public policy requires that all such persons shall be held to responsibility for their acts, without reference to their knowledge or want of knowledge of the law."

[7, 8] We are not to be understood as holding that it is necessary in any case to produce direct testimony to show that the party alleged to have ratified his former contract had knowledge at that time of the defect in it. That fact, as well as almost any other fact, may be shown by circumstantial evidence. In this case no evidence was produced that shed any light upon that subject, unless it be the circumstance that 4 months had elapsed between the time the appellant attained his majority and when he wrote the letter relied on as constituting ratification of the contract; and we are not willing to hold that such brief lapse of time will justify a finding that appellant knew that the contract was not binding upon him. Nor can we indorse the holding of the trial court that, because about 8 months had elapsed after appellant attained his majority before he expressly disaffirmed the contract, such disaffirmance was not made within a reasonable time. It was not shown that the failure to disaffirm earlier resulted in any injury to appellee, and therefore, if it be conceded, which we do not hold, that in this class of cases the minor may become bound because of his mere failure to disaffirm within a time short of the period of limitation, still we hold in this case that appellant's disaffirmance was within a reasonable time, and that he did not become bound by his failure to disaffirm earlier.

[9] This leaves no fact or circumstance to support the judgment in this case, except the fact that appellant wrote the letter set out in the trial court's finding of facts. That letter merely stated that it appeared from the contract of purchase, which he had entered into during his minority, that he had agreed to pay the taxes due on the property after a certain date, and requested the other party to the contract to notify him promptly as to the amount of taxes due on the property for the year 1914, and to advise him whether he should remit the money to pay such taxes to the tax collector or to Koch & Co., the party addressed, and from whom he had contracted to purchase the property. There is nothing in that letter to indicate that appellant was aware of the fact that the contract was not binding upon him. On the contrary, it would rather seem that he assumed that it was. It contained no promise, either express or implied, to perform all the obligations of the contract. In fact, it was limited to the obligation to pay taxes on the property, and contained no promise to pay such taxes. If he knew at that time that the contract was not binding upon him, unless he ratified it, his purpose in writing the letter may have been to ascertain the amount of taxes due on the property, in order to determine whether or not he would ratify and adopt the contract. At any rate, it was not shown that he paid the taxes, or made any other payment after he attained the age of majority; and the statements made by him in the letter tend less to prove ratification of the contract than did the two payments made in the case of Rapid Transit Land Co. v. Sanford, supra, in which it was held that ratification was not shown.

In conclusion, we deem it not amiss to say that, while some of the earlier American cases may have gone too far in protecting minors against contracts made during minority, some of the later decisions seem to have gone equally far in the opposite direction. The inability of a minor to bind himself by contract is so well established as a principle of law, and rests upon such a just foundation, as leaves no doubt as to the duty of courts to administer that rule of law, in order that minors may obtain the benefits to secure which that rule was established. And while the courts have properly held that such contracts are not absolutely void, and may become binding by ratification or estoppel after the disability of minority has been removed, that rule ought not to be applied in such manner as to nullify the rule established for the protection of the minor. In this state, in so far as our research has gone, the appellate courts have gone to neither extreme; but while attempting to administer the law with reasonable fairness, have kept in mind the fact that its prime object is the protection of minors. This is illustrated by the case of Bullock v. Sprowls, 93 Tex. 188, 54 S. W. 661, 47 L. R. A. 326, 77 Am. St. Rep. 849, in which our Supreme Court declined to follow some decisions in other jurisdictions,

and expressions in some of its former opinions, to the effect that before a minor is entitled to a judgment, canceling a deed made by him, he must offer to restore or account for the consideration received by him, even though it is made to appear that he has disposed of such consideration; and, among other things, the court said:

"If a recovery of the land is to be denied him until he shall restore an equivalent for the money which he has thus been enabled to dissipate, the purpose of the law will be defeated, and his estate will be taken to make good the money which the person dealing with him has put it in his power to squander through his lack of discretion. The disability laid upon minors to sell their property will afford small protection if purchasers may pay them money upon it, and, after it has been lost through extravagance or indiscretion, hold the property as a security for the return of the money. Proper consideration for the interests of parties who thus knowingly deal with minors does not demand that the purposes of the law in imposing the disability should be defeated. Losses which occur in such dealings are only what persons buying property from and paying money to minors should expect from their presumed incapacity to judiciously manage business affairs, and they are natural consequences of such risks which can furnish no good reason for denying to the minors the protection which it is the purpose of the law to give them. We do not think it was ever the purpose of the learned judges who wrote the opinions in the cases cited to lay down a rule so broad that, in its operation, it would conflict with the leading principle which renders minors incapable of conveying away their property; but that it was only meant to state a general principle under which all persons would be protected from loss as far as this could be done consistently with the protection designed to be given to the interests of the minor."

In that case the consideration for the deed made by the minor had been received and disposed of by him, and yet it was held that he was entitled, without making compensation to his vendee, to recover the land.

For the reasons stated, our conclusion is that the judgment of the trial court should be reversed, and the cause remanded for another trial; and it is so ordered.

Reversed and remanded.