## WALKER v. STOKES BROS. & CO.
### (No. 6757.)

(Court of Civil Appeals of Texas. Austin. April 16, 1924.)

**1. Infants ☞58(1)—Minor need not, in order to exercise election to avoid suretyship contract, disavow it within a reasonable time after reaching majority.**

A minor need not, in order to exercise his election to avoid a contract of suretyship, affirmatively disavow it within a reasonable time after reaching his majority.

**2. Infants ☞98—Evidence held not to show that minor ratified suretyship after reaching majority.**

Evidence that a surety, while yet a minor, consulted an attorney and learned that he was not liable on a note and thereafter ignored requests to pay it, and interposed his plea of infancy in suit to collect note, *held* not to show a ratification of suretyship after he became of age.

Appeal from Lampasas County Court; J. Tom Higgins, Judge.

Action by Stokes Brothers & Co. against S. V. Walker and others. Judgment for plaintiffs, and named defendant appeals. Reversed and rendered.

Abney & Abney, of Lampasas, for appellant.

H. F. Lewis, of Lampasas, for appellees.

McCLENDON, C. J. The controlling question in this case is whether a minor, in order to exercise his election to avoid his contract of suretyship, must affirmatively disavow it in a reasonable time after attaining his majority.

The suit was by appellees against appellant and C. C. Walker, upon a joint note of the defendants, and to foreclose a chattel mortgage executed by defendant C. C. Walker, as security for the note. The trial was to the court without a jury, and the judgment was against both defendants for $400.58, and against C. C. Walker foreclosing the mortgage. S. V. Walker alone has appealed.

The note was executed October 31, 1917, for the principal sum of $397.50, and became due September 1, 1918. S. V. Walker was then a minor and became of legal age May 12, 1920. The note was given to take up an old, past-due debt of C. C. Walker and to cover additional supplies to be furnished him by appellees. S. V. Walker was in no way connected with this old debt, and none of the advances were to be, or were in fact, made to him. He acquired no benefit whatever from the note, but merely signed it as accommodation surety for C. C. Walker, his brother. The circumstances surrounding the transaction are thus described by one of the appellees:

"He (C. C. Walker) did not want us to bring suit, and we asked if he could give us some more security. On October 31, 1917, he came into the office of Stokes Bros. & Co. with his father, W. B. Walker, and his brother, S. V. Walker, and executed the note for $397.50, on which this suit is based. We wanted his father, W. B. Walker, to sign the note with him, but W. B. Walker refused and said that his son, S. V. Walker, would sign the note with C. C. Walker, and that he (W. B. Walker) would see the note paid. W B. Walker then told me that S. V. Walker was not 21 years of age, but that he attended to all of his (W. B. Walker's) business and was running his own affairs. C. C. Walker then signed the note, and S. V. Walker signed it with him. * * *

"I knew that S. V. Walker was a minor at this time, and I thought at that time that W. B. Walker would be bound on the note because of the statements he made to me about seeing the note paid. When the note became due, we wrote C. C. Walker and S. V. Walker about payment. W. B. Walker died about this time, and we threatened to sue the boys if something was not done about the note. S. V. Walker came in to see us about the matter, and I told him that his father's estate was bound for the debt, as we believed that his father was liable because of the statements he made to me when the note was made. If S. V. Walker was under 21 years of age at this time, I did not know it. I did not ask him about his age. We did not get any action about the note until suit was filed. S. V. Walker did not tell us that he disaffirmed the contract, and the first that I knew was that he filed his answer to this suit setting up his minority plea and disaffirming the contract. We sent letters properly addressed and stamped and deposited in the United States mails to S. V. Walker and C. C. Walker, and these letters were never returned to us."

There is no conflict whatever in the testimony of this witness and S. V. Walker, who were the only witnesses in the case. The following is from S. V. Walker's evidence:

"I never got anything out of the note, and I have never made any payments on the note. In 1918, when the note came due, Stokes Bros. & Co. threatened to sue if my mother did not sign the note with us. My father had died, and Stokes told me that my father's estate was bound for the note. I talked to a lawyer about this, and the lawyer told me different, so I never did have anything further to do with it. I was not 21 years of age at the time of seeing the lawyer. I have never had anything to do with it since becoming of age, as I have refused to recognize the note, for the lawyer told me that I was not bound on the note because I was a minor at the time I signed it. Since becoming of age I have not made any payment on the note or told any one that I was bound on the note. I have refused to recognize it as my debt, and I never received any benefit from the note. After I became of age, I heard nothing from Stokes.

Bros. & Co., and no demand was ever made on me by Mr. Stokes or any one for him or for Stokes Bros. & Co. after I became of age. The first notice I had of demand being made on me was when the sheriff served me with papers in this case, on March 22, 1922. After I became 21 years of age I did not tell Stokes Bros. & Co. that. I would not recognize the debt as my debt. I never talked with them or heard from them after I became of age."

Contracts of minors were at one time divided into three general classes: Those which were valid, those which were absolutely void, and those which were voidable by the minor at his option after attaining his majority.

With the first class we are not here concerned.

The common-law distinction between void and voidable, as applied to contracts, is that the former have no binding effect upon either party and are incapable of ratification; while the latter are binding until set aside. The rule which invalidates contracts of minors is for their protection. Consequently, an early distinction was drawn between contracts which were or might be to the interest of the minor and those which were against his interest. The former were held voidable and the latter void. In this latter class a contract of suretyship would necessarily fall; and while cases in which the question was necessarily involved are rare, the earlier opinions by way of illustration cite suretyship as an example of this class of contracts. Corpus Juris (volume 31, p. 1090) cites only two cases in support of this holding: West v. Penny, 16 Ala. 186, and Maple v. Wightman, 4 Conn. 376, 10 Am. Dec. 149. The Alabama case has no bearing upon the subject, and the holding in the Connecticut case is rested upon a statute of that state.

The early classification of contracts of minors into those which are void and those which are voidable has gradually given way; and by the great weight of authority all contracts of minors are now treated as only voidable, on that account. Contracts of suretyship are not an exception to this rule. The decisions in Texas have uniformly held all contracts of minors as voidable only.

Treating such contracts as voidable, at the instance of the minor after reaching his majority, and as binding upon the other party until so avoided, it is clear that in certain classes of contracts it would be manifestly unjust to the party so bound to hold open indefinitely this right of election; whereas, in other classes of contracts it would be equally unjust to the minor to require of him an express repudiation. It has been held that the distinguishing test between these two classes of contracts is whether the contract is executed or executory, and this test has been applied in this state. Clemmer v. Price (Tex. Civ. App.) 125 S. W. 604; Fletch-er v. Koch (Tex. Civ. App.) 189 S. W. 501. The expressions, "executed" and "executory," when used in this connection, relate to the terms or obligations of the contract, and not to the agreement itself, or the instrument by which it is evidenced. "Performed" would more nearly express the precise meaning intended to be conveyed.

This test, however, has led to much confusion, and has been severely criticized. We quote from the very able and exhaustive note to Craig v. Van Bebber, 18 Am. St. Rep. 672:

"After an infant arrives at majority, there is no doubt about his power to repudiate as well as confirm his contracts made during minority. But it is a question involved in considerable confusion whether any or all of an infant's contracts not previously avoided must be disaffirmed by him within a reasonable or any particular time after he reaches full age; or in other words, whether his contracts may become binding upon him by the lapse of time, and no longer subject to disaffirmance. Much of this confusion has resulted from the application, or rather misapplication, of a dictum by Dallas, J., in Holmes v. Blogg, 8 Taunt. 35, 39, to the following effect: 'I agree that in every instance of a contract voidable only by an infant on coming of age, the infant is bound to give notice of disaffirmance of such contract in reasonable time; and if the case before the court (the case of a lease to an infant) were that simple case, I should be disposed to hold that as the infant had not given express notice of disaffirmance within four months, he had not given notice of disaffirmance in reasonable time.' There is certainly a distinction, which this quotation fails to make, between the different contracts which an infant may enter into with respect to his obligation to disaffirm within a reasonable time after he comes of age. See the classification made by Shepley, J., in Boody v. McKenney, 23 Me. 517, 523–526. And sometimes the distinction is said to be between his executory and his executed contracts. Thus, to illustrate the use of these terms, it is asserted that where the contract of an infant is executory, the infant must, to render him liable thereon, on arriving at full age, expressly ratify it; but where the act is executed, the infant must, on attaining full age, do some act to disaffirm the contract. Law v. Long, 41 Ind. 586, 596; Scranton v. Stewart, 52 Ind. 68, 92; and see State ex rel. Petty v. Rousseau, 94 N. C. 355, 361. 'In other words,' says Buskirk, J., in the first of these cases, 'where the contract is executory, there must be an affirmance, to render the contract valid; and where it is executed, there must be a disaffirmance, to avoid the operation of the deed.' What, we may stop to inquire, does the court mean by an 'executory' contract? One that is promissory on both sides, or on the side of the infant, or of the other contracting party, or any or all of these? And what does it mean by an 'executed' contract? It is very evident that such a rule is worse than useless because of its inaccurate use of legal language; and besides, it will be shown that giving the expressions any of the meanings suggested, the rule is not correct."

In the early case of Boody v. McKenney, cited in this note, this test is ignored and a classification of contracts given in which the position of the parties with reference to the subject-matter of the contract is made the determining factor whether the minor must in a reasonable time after attaining majority affirmatively disavow the contract. It would seem to be in better accord with reason and sound principle to base the classification upon the effect which mere nonaction by the minor has upon the respective rights or interests of the parties, rather than upon the arbitrary test of whether the contract be regarded as executed or executory, either in whole or in part. Where title to real estate or personalty has vested in either party, or where, in order to rescind, some duty rests upon the minor to do equity, such as restore the consideration still in his hands after attaining majority, it would seem that in justice to the other party, the minor should be required to exercise his right of election within a reasonable time. His failure to do so should conclude his right of election upon principles of estoppel. Take for example a case where title to real estate has vested in either party. By holding the right of election open definitely, the minor would be enabled, after majority, to speculate upon fluctuations in value, to affirm or disaffirm, as his subsequent interest might dictate; whereas, the other party would be helpless until the minor might see fit to act. The protection which the rule affords is against the deleterious effects of contracts made during minority. Beyond that date he is for all purposes sui juris, and should be required to act within a reasonable time in all cases where not to require it would be inequitable or unjust to the other party.

On the other hand, where the only obligation resting upon either party is that of payment by the minor of a sum of money or the performance of some service, we see no reason why he should be required to do more than resist enforcement of the contract whenever attempted by the other party.

Contracts falling in this latter category are usually treated as executory, in the sense in which that term is employed in the test above referred to, and "the right in respect" to them "is exercised by interposing the plea of infancy to an action upon the contract, or for its breach." 16 A. & E. Ency. of Law (2d Ed.) p. 287.

[1] Whatever be the proper test, it is clear that a simple contract of suretyship falls within the class of contracts in which affirmative action of the minor within a reasonable time after reaching majority should not be required as a condition precedent to his right of election. The holder of such obligation could not possibly suffer any detriment or inconvenience by the minor's inaction, and it could serve no useful purpose to require affirmative action on the minor's part.

[2] In the instant case the evidence negatives any adoption or ratification on the part of S. V. Walker after he became of age. After his father's death, and while he was yet a minor, he consulted an attorney and learned that he was not legally liable upon the note, and ever since that time he has ignored written requests by appellees to pay it. When suit was eventually filed by them he resisted their efforts to impose liability by a plea of infancy. The note became due September 1, 1918; S. V. Walker attained his majority on May 12, 1920. Appellees had the power to put him to his election by bringing suit at any time after he became of legal age, if they felt it was to their interest to do so. Their own delay to file suit should not estop appellant from interposing this defense.

The record negatives liability on appellant's part, and the judgment against him should therefore be reversed, and judgment here rendered in his favor.

It is so decreed.

Reversed and rendered.