**TRYAD SERVICE CORPORATION,**
Appellant,

v.

**MACHINE TOOL CENTER, INC., et al.,**
Appellees.

No. 993.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

July 17, 1974.

Rehearing Denied Sept. 4, 1974.

Bryan W. Scott, Robbie S. Morris, Urban, Coolidge, Pennington & Scott, Houston, for appellant.

A. H. Evans, Vinson, Elkins, Searls, Connally & Smith, Bill Cannon, Theodore R. Kirchheimer, Houston, for appellees.

TUNKS, Chief Justice.

This is a suit for breach of contract.

The appellant, Tryad Service Corporation, brought suit against appellees, Machine Tool Center, Inc., and Reed Drilling Tools Division of G. W. Murphy Industries, Inc., (now known as Reed Tool Company) for breach of a contract to sell a certain piece of industrial equipment. After Tryad had rested, the trial judge, upon motions by the appellees, withdrew the case from the jury and granted a judgment that Tryad take nothing.

An instructed verdict is proper only when there are no material fact issues. Air Conditioning v. Harrison-Wilson-Pearson, 151 Tex. 635, 253 S.W.2d 422 (1952). If reasonable men may differ, then a fact issue exists. Najera v. Great Atlantic & Pacific Tea Co., 146 Tex. 367, 207 S.W.2d 365 (1948). In our determination of the above test, the evidence must be viewed in the light most favorable to the appellant, Anderson v. Moore, 448 S.W.2d 105 (Tex.Sup.1969), every reasonable inference must be indulged in the appellant's favor, Tripp v. West Texas Utilities Company, 461 S.W.2d 224 (Tex.Civ.App.—El Paso 1970, writ ref'd n. r. e.), and all contradictory evidence which is unfavorable to the appellant must be discarded. Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953).

The evidence, as viewed under the above standards, is as follows. Tryad is in the business of cutting and threading pipe. In 1969 it was seeking to purchase a used Smalley General 30 threadmill. Mr. Jack Augsburger, president of Tryad, came to Houston in March of 1969 seeking to make a purchase of this machine. While in Houston, he went to Machine Tool Center, Inc., which deals in used machinery. He talked with Benedict O'Leary, vice-president of Machine Tool, who informed him that he know of a company which was seeking to sell a Smalley General 30 threadmill. Augsburger and O'Leary went to the plant of Reed Tool, where they met with Mr. Duane Wolfe, who showed Augsburger the machine. At that time the machine was not in working condition because of missing parts. Wolfe informed Augsburger that the parts had been ordered and the machine could be put in working order in about six weeks. Augsburger and O'Leary returned to the offices of Machine Tool. Augsburger called his corporate offices in California to confer with the other principal in the company.

The next day Augsburger and O'Leary returned to Reed, and Augsburger was told that the purchase price of the machine was $22,000 F.O.B. Houston. The deal was to be arranged in such a manner that Machine Tool was to purchase the machine from Reed for approximately $15,000 in cash and one turret lathe, which was worth about $5000. This would leave Machine Tool with a profit of about $2000 on the transaction. Augsburger made an offer of $22,500 F.O.B. Long Beach, California, with the machine to be put in running order by Reed. The additional $500 was to cover freight expenses. Wolfe told Augsburger that he did not have authority to bind the corporation to such a contract and that they would have to see Bill Cannon, who was vice-president of Reed in charge of manufacturing. Mr. Cannon was super-

visor of the Reed plant and was in charge of about 1100 men. Cannon agreed to the terms and agreed to furnish a letter stating that Reed would deliver the machine in running order.

Augsburger then returned to Machine Tool and utilized its office to prepare, on a Machine Tool letterhead, the following written memorandum of the oral agreement:

March 19, 1969

Tryad Service Corp.
3914 Cherry Avenue
Long Beach 7, California

ATTENTION: Mr. Jack J. Augsburger

Gentlemen:

We agree to sell:

1—Smalley General Co. size 30 MB thread mill—Ser. # 7195—$10\frac{1}{2}$" spindle hole—30" swing-over-bed—cross slide attachment—carriage with hydraulic feed—33" long travel—25" cross travel—built-in hydraulic system—coolant pump unit—carriage spindle with V belt motor drive from top mounted Sterling 10-5 H/P Speed-Trol unit—3/60/220—2000/1000 max. R/R/M—main spindle with V belt motor drive 15 H/P Speed-Trol unit—3/60/220/2000/666 incl. controls and wiring.

Price . . . $22,500.00/Net

F.O.B. Your Plant—Long Beach California

DELIVERY: Approximately 6 weeks

The above machine to be put in A 1 running condition and fully assembled; final inspection to be made by J. J. Augsburger or a duly authorized representative of Tryad Service Corporation prior to final acceptance and delivery.

The above has been agreed upon as per letter from Reed Drilling Tools Division of G. W. Murphy Industries dated the 19th of March 1969.

TERMS: $4,500.00 due as of receipt of above letter by Tryad Service Corp. Balance of $18,000.00 due after inspection prior to shipping of machine.

MACHINE TOOL CENTER INC.

/s/ Dick O'Leary
Dick O'Leary—Vice President

Accepted by:        /s/ Jack Augsburger

———◆———

Wolfe prepared the letter from Reed and read it to Augsburger over the phone. O'Leary signed the written memorandum prepared by Augsburger, after it was approved by Mr. Rod, who was president of Machine Tool.

That same day, Augsburger left Houston to conduct further business in New Orleans. While still in that city, he received a phone call from O'Leary telling him that the deal was off; Reed had decided not to sell the machine to Machine Tool, so Ma-

chine Tool would not be able to sell to Tryad. Tryad never received a copy of the letter prepared by Reed, and the machine was never delivered. When the same piece of equipment could not be located, Tryad purchased a new, but comparable machine in Belgium, for approximately $60,000. Tryad could have purchased a new Smalley General 30 threadmill, but the cost would have been around $90,000. In December of 1969 Tryad brought this action for damages sustained by the alleged breaches of contract by Machine Tool and Reed. Tryad brought this appeal on the sole ground that the instructed verdict was improper.

■ Appellee Machine Tool contends that the instructed verdict was proper because Tryad failed to prove that a condition precedent to the contract had been fulfilled. This argument is founded upon the position that the parties did not intend for the sales agreement to be binding until the above-mentioned letter was actually delivered from Reed to Tryad. Although the evidence might support such a conclusion, it also would support the conclusion that Reed actually agreed to send the letter. The face of the written memorandum does not clearly establish the intent of the parties concerning this matter. A jury question was therefore raised. The instructed verdict in favor of Machine Tool was improper.

Appellee Reed contends that even if there were an agreement between Reed and Tryad, it would not be enforceable by virtue of the Statute of Frauds, Tex.Bus. & Comm.Code Ann. V.T.C.A., § 2.201(a) (1968). This statute provides in part as follows:

(a) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

The only two persons to sign the memorandum were Augsburger and O'Leary. Therefore, the contract is enforceable against Reed only if Machine Tool was acting as an agent or broker for Reed.

There is evidence that Reed provided Machine Tool with a description of the machine in question and requested that Machine Tool attempt to find a buyer. Mr. Wolfe, who had been authorized by Mr. Cannon to sell the machine testified as follows:

Q Did you have any discussions with Mr. Dick O'Leary at Machine Tool Center in regards to the sale of this particular piece of equipment?

A Yes.

Q What was your first discussion with him concerning this?

A Well, when I got an okay from my boss to sell it, then I contacted Dick to have him try to find a buyer for it.

Q When you contacted Dick, what did you tell him?

A Well, of course, I was looking for a turret lathe which he had and I was going to have him sell this machine and I was going in the transaction to get the turret lathe, plus the difference in the cash value.

Q Did you tell him the general price that you wanted to obtain for this piece of equipment?

A Yes. Yes, I did.

■ Authority of an agent to bind a principal in a particular transaction does not require formal action on the part of the principal. It may be created by "written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him to so act on the principal's account." Restatement (Second) of Agency sec. 26 (1958). Furthermore, the agent can bind the principal if the principal has created apparent authority of the agent. "[A]pparent authority to do an act is created as to a third person by written or spo-

ken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Restatement (Second) of Agency sec. 27 (1958). These rules are applicable to the question as to the authority of the officers and employees of the corporate defendant, Reed, as well as to the question of the authority of Machine Tool to bind Reed by the contract in question. W. Fletcher, Private Corporations sec. 449 (1969). They are also applicable to the authority of the officers and employees of Reed to delegate to Machine Tool the authority to bind Reed. Restatement (Second) of Agency sec. 77 (1958).

In the record of this case there is some evidence of the authority of Reed's officers and employees to sell the machinery in question and that they created authority in Machine Tool to execute, in Reed's behalf, the contract for the sale of the machine. The trial court erred in instructing a verdict in favor of the defendant Reed.

Reversed and remanded.