HOBBS TRAILERS, a division of
Fruehauf Corporation, Petitioner,

v.

J. T. ARNETT GRAIN COMPANY,
INC., et al., Respondents.

No. B–6261.

Supreme Court of Texas.

Dec. 14, 1977.

Rehearing Denied Feb. 1, 1978.

J. C. Jacobs, Corsicana, for petitioner.

Ken R. Davey, Kerry P. Fitzgerald, Dallas, for respondents.

## ON MOTION FOR REHEARING

POPE, Justice.

We grant Hobbs Trailers' motion for rehearing and withdraw and set aside our former opinion and judgment of June 29, 1977. The controlling questions are whether the trial court correctly disregarded findings of the jury based on evidence that violated the parol evidence rule and whether the trial court correctly rejected certain offsets against the judgment for Hobbs on the grounds that they were barred by limitations. We reverse the judgment of the court of civil appeals and affirm that of the trial court. Tex.Civ.App., 540 S.W.2d 441.

J. T. Arnett Grain Company, Inc., was the original plaintiff. It alleged an action against Hobbs Trailers, A Division of Fruehauf Corporation, for breach of implied warranty of fitness as to certain refrigeration units and for title and possession of some trailers that Hobbs had repossessed. After extensive pleadings, the trial court cast Hobbs as plaintiff and Arnett Grain as defendant. The trial court rendered judgment for Hobbs in the sum of $11,081.28, the amount of unpaid purchase price for certain trailers that Arnett Grain bought from Hobbs. That part of the judgment is not here in question. The trial court also rendered judgment, notwithstanding the verdict, in favor of Hobbs in an additional amount of $13,440 for sixteen months of rentals that Arnett Grain failed to pay after the expiration of the term of a lease on three other trailers. The court of civil appeals held that parol evidence was admissible to show the true contract between the seller and buyer and reversed that part of the trial court's judgment. It is our opinion that the court of civil appeals was wrong in holding that the parol evidence was admissible, since the evidence varied and contradicted the clear and exclusive terms of the written contract.

On May 1, 1969, Hobbs and Arnett Grain executed a written contract which evidenced their arrangement concerning three trailers. Hobbs says that the contract was a lease; Arnett Grain says it was a lease-purchase contract with a collateral oral agreement by which, upon payment of one dollar per trailer at the end of sixty rental payments, Arnett Grain would acquire title to the trailers. Arnett Grain argues that it owed nothing by way of rentals for the trailers after its payment of rentals for the sixty months because it contracted to buy, not rent, the trailers. It also claims an offset against any damages it owes to Hobbs. The offset, says Arnett Grain, was that amount of damages it sustained by reason of Hobbs' breach of a warranty of fitness for the refrigeration equipment.

Arnett Grain produced evidence that Hobbs in its business offered several different kinds of deals for its vehicles. They made outright sales, they leased, or they leased with an agreement that the lessee

would obtain title upon payment of one dollar at the end of the lease term. Arnett Grain then called James Harper as a witness. Harper was the salesman who showed the vehicles to Arnett Grain's representative when they made the deal. Over Hobbs' objection that the evidence violated the parol evidence rule, the salesman was permitted to testify that he understood the agreement was for "a full lease payoff . . .." Mr. Arnett also testified that his understanding with Harper and Bruce Meyer, the only one who was authorized to approve and make a deal for the trailers, was that he "was buying this on the full lease payout, which would be a dollar option," meaning that, upon the payment of one dollar per trailer after sixty months of lease payments, Arnett Grain would own the trailers.

The contract was denominated an "equipment lease." It designated Hobbs throughout as lessor and Arnett Grain as lessee. Arnett Grain agreed to pay "rental payments." Arnett Grain, as lessee, agreed not to assign or sublet the trailers. Hobbs agreed as lessor to pay the taxes on the trailers and reserved the right to place at two places on the trailers the words "Fruehauf Corporation, Lessor." The contract said that the purpose of those quoted words was to indicate the ownership of the equipment. Arnett Grain agreed as lessee to return the equipment to lessor at the termination of the agreement. Paragraphs 4 and 13 of the contract are significant enough to state in full.

"4. This transaction is a leasing and not a sale, conditional or otherwise. The parties understand and agree that Lessee does not acquire hereunder, or by the payment of rental hereunder, any right, title, or interest in or to said equipment or any thereof, except the right to possess and use said equipment so long, and only so long, as Lessee shall not be in default hereunder.

"13. This instrument contains the entire agreement between the parties pertaining to the subject matter. No agreements, representations or understandings, not specifically contained herein shall be binding upon any of the parties hereto unless reduced to writing and signed by the parties to be bound thereby."

▆ Confronted with those terms of the contract between these parties, the trial court correctly concluded that the transaction was a lease, not a sale. The trial court properly held that the contract was controlling and that parol evidence could not contradict it. This court has said "the very purpose of putting the agreement in writing is to definitely settle its terms and to exclude all oral understandings to the contrary." *Super-Cold Southwest Co. v. Elkins,* 140 Tex. 48, 166 S.W.2d 97, 98 (1942). We have not departed from that rule of substantive law. *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30 (1958). Article 2.202 of the Uniform Commercial Code prohibits the contradiction of final written expressions by evidence of a prior or contemporaneous agreement. *See also* 2 C. McCormick & R. Ray, Texas Law of Evidence § 1602, at 445–446 (1956).

Arnett Grain relies upon the rule of law which permits a collateral contract to stand so long as it is not inconsistent with another contract. That rule is a sound one, and it was the one that this court applied in *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30 (1958). The present contract between the parties, however, was complete and final, and it expressly excluded any other agreements. A lease of the trailers with an express agreement that the lessee will not, by paying the rental, acquire any right, title, or interest in the equipment is inconsistent with a contemporaneous collateral agreement that the lessee will acquire title.

Arnett Grain also has an application for writ of error. It complains of the refusal of the courts below to allow a setoff for Hobbs' breach of a warranty of fitness for four refrigeration units that Hobbs installed on four trailers. The courts below denied the claimed setoff because the claims were barred by limitations.

On March 23, 1968, Hobbs installed two refrigeration units, known as Arctic Travel-

ers, on two trailers that Arnett Grain was buying from Hobbs. On May 1, 1968, Hobbs installed two of the same kind of units on two trailers that Arnett Grain was leasing. The units malfunctioned from their first use and in November of 1968 Arnett Grain replaced all of the units with Thermo King units. Its cause of action arose at that time. The jury found that Arnett Grain was damaged by the inadequate refrigeration units in the sum of $7,159.13 which it says should be offset against the damages Hobbs sustained.

The trial court denied a setoff for the two units installed on the trailers Arnett Grain was buying because Arnett Grain had executed a modification agreement wherein it released Hobbs "of and from any and all claims, demands, actions, causes of action, and suits at law or in equity, without relief, which buyer has or may hereafter have against Seller based upon, arising in connection with, or growing out of the sale of said goods, or any thereof, whether such claims, etc., arise in tort, contract or warranty, express or implied."

■ The trial court denied the alleged setoff as to all four units for the additional reason that the claims were barred by limitations. Arnett Grain initiated its suit for breach of warranty by filing its original petition on January 26, 1973. That action was then barred. Arnett Grain argues, however, that since, after extensive pleading by the parties, it was cast as a defendant with Hobbs as the plaintiff, it may assert the setoff defensively. Arnett Grain's claim for breach of warranty was not a defense but an independent cause of action and was at first so asserted. As such, the plea of limitations was a valid one. *Southern Pacific Company v. Porter,* 160 Tex. 329, 331 S.W.2d 42 (1960); *Morriss-Buick Co. v. Davis,* 127 Tex. 41, 91 S.W.2d 313 (1936); *Nelson v. San Antonio Traction Co.,* 107 Tex. 180, 175 S.W. 434 (1915); *Finger v. Morris,* 468 S.W.2d 572 (Tex.Civ.App. 1971, writ ref'd n. r. e.). The difference between an independent cause of action to which limitations runs and a defense to an action against which it does not run was

explained in *Mason v. Peterson,* 250 S.W. 142, 147 (Tex.Comm.App.1923, judgmt approved), where the Commission of Appeals wrote:

The distinction between partial or total failure of consideration of a contract by reason of fraud or mutual mistake, as a defense . . ., on the one hand, and the right of action for damages for breach of or failure to comply with a contract, on the other is clearly drawn. . . . . In the former the relief may be awarded in abatement of the price contracted to be paid, and when so sought it is purely defensive matter; whereas the right to relief for breach of contract is clearly independent of the obligation of the purchaser to pay the contract price, and relief is awarded in a suit for the price only by way of setoff or counterclaim, as to which limitation is a recognized plea.

■ It is true, as Arnett Grain asserts, that the period of limitations for certain counterclaims or cross-actions is extended *when they are asserted as such. See* Tex. Rev.Civ.Stat.Ann. art. 5539c. If the breach of contract action had been asserted in a counterclaim or crossclaim, Article 5539c would have extended the period for filing the claim for thirty days beyond the date the defendant's answer was due in the original suit, even though the counterclaim or crossclaim would otherwise be barred by limitation, provided the claim arose out of the same transaction as the plaintiff's suit. Here, however, Arnett Grain was the original plaintiff. Only after Hobbs answered as a defendant and the trial judge realigned the parties did Arnett Grain become defendant. We do not believe the legislature intended to force an original defendant to choose between asserting a valid bar by limitation and asserting a valid counterclaim, for fear that upon interchange of the parties the original claim would become the "counterclaim" and thus be saved by Article 5539c. The statute was intended to prevent a plaintiff from waiting until an adversary's valid claim arising from the same transaction was barred by limitation before

asserting his own claim. Here Arnett Grain was the original plaintiff. The phrase "30 days following such answer date" in the statute may not be applied to the situation in which the original plaintiff becomes the nominal defendant. Accordingly, we hold that the statute does not extend the limitation period when the claim was originally asserted as other than a counterclaim or crossclaim. The claim for damages for breach of warranty was barred by limitations.

We accordingly reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

STEAKLEY, J., writes dissent in which JOHNSON, J., joins.

STEAKLEY, Justice, dissenting.

I am concerned with the suit of J. T. Arnett Grain Company against Hobbs Trailers for rescission or reformation of three trailer agreements, the effect of which rescission or reformation would be to enforce an agreement collateral to the writings between the parties. As to this, I respectfully dissent. In my view, the majority has given this short shrift.

After jury trial, and notwithstanding certain jury findings later reviewed, the trial court rendered judgment for Hobbs in the sum of $24,521.28 and decreed that Arnett take nothing in its suit against Hobbs. This judgment was in part affirmed and in part reversed and rendered by the Court of Civil Appeals. That court held that Hobbs was entitled to judgment for $11,081.28, the balance due under certain sales contracts, and Arnett does not complain of this action. The Court of Civil Appeals further held that Arnett was entitled to a judgment of title to the three trailers that were the subject of the agreements forming the basis of Arnett's suit and that therefore Hobbs was not entitled to the alleged holdover rental value of $13,440. As to this, I would affirm the judgment of the Court of Civil Appeals but for reasons differing in certain respects from those expressed by that court.

With respect to the trailer agreements between Hobbs and Arnett, the jury found that under the agreements of the parties, J. T. Arnett would be entitled to the ownership of the trailers for the sum of one dollar each at the end of the leasing period. Additionally, the jury found that at the times in question James Harper told Arnett that the leases were actually lease-purchase agreements under which Arnett would have the option to pay one dollar for each trailer at the end of the lease periods and get title to the trailers; that Harper had authority from Hobbs to make such statement; that such representations were false but Harper did not know they were false; that Arnett relied on such false representations; and that the representations were material inducements to his entering into the contracts in question. The trial court ruled that notwithstanding these findings Arnett was not entitled to recover the three leased trailers because such would be in contravention of the Parol Evidence Rule and of Article 2.202 of the Uniform Commercial Code. The Court of Civil Appeals, on the other hand, ruled that Arnett had established fraud in the inducement of the contract and was entitled to judgment awarding him title to the three trailers. Hobbs invokes the Parol Evidence Rule, as well as Article 2.202 of the Uniform Commercial Code, in seeking a reversal of the judgment of the Court of Civil Appeals in such respects and an affirmance of the judgment of the trial court. For the reasons now to be stated, it is my view that the record establishes a contemporaneous agreement collateral to and not inconsistent with the writing within the rationale of *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 33 (1958). There we cited with approval the Restatement rule, as follows:

(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

(a) is made for separate consideration, or

(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract.

*Id.* at 33, quoting Restatement of Contracts § 240 (1932).

The three trailer agreements in question were executed by Arnett and Hobbs in 1968 and the writing contained these recitations:

"4. This transaction is a leasing and not a sale, conditional or otherwise. The parties understand and agree that Lessee does not acquire hereunder, or by payment of rental hereunder, any right, title, or interest in or to said equipment or any thereof, except the right to possess and use said equipment so long, and only so long, as Lessee shall not be in default hereunder."

.    .    .    .    .

"11. This instrument contains the entire agreement between the parties pertaining to the subject matter hereof. No agreements, representations, or understandings not specifically contained herein shall be binding upon any of the parties hereto unless reduced to writing and signed by the parties to be bound thereby . . .." Tr. 33.

At trial Hobbs assumed the position of plaintiff by agreement of counsel approved by the court. The only witness presented by Hobbs was Jerry Rawle, its Dallas, Texas, office manager. After establishing the written agreements mentioned above, Rawle testified under cross-examination by counsel for Arnett, and without objection by counsel for Hobbs, that James Harper was the Hobbs salesman who serviced the Arnett account; that Bruce Meyer was the Hobbs credit manager at the time; and that "[T]he actual deal would involve Bruce Meyer, James Harper and Howard Case." Rawle also testified that Hobbs had two types of lease programs: one a full purchase lease at the end of which the customer could pay one dollar and receive title to the trailer and the other a residual lease under the terms of which there would be a pay-out payment by the customer at the end of the lease as a condition to the acqui-

sition of title. He said that these are ordinarily "tax devices to give customers a little tax break."

Hobbs rested after presenting the testimony of Rawle, whereupon counsel for Arnett called the witness Bruce Meyer who had been identified by Rawle as the credit manager for Hobbs at the times in question. Meyer recalled when "Mr. Harper brought or asked J. T. Arnett to come in and discuss some leases with him." He testified that he explained the lease options or programs to Arnett but could not recall "which of the two he [Arnett] decide[d] to use." Counsel for Hobbs did not object to this testimony and on cross-examination of this witness established that there were three types of contracts, "[O]ne of these being a purchase, one being a lease purchase with One Dollar at the end, and one being a lease contract"; that "[F]rom the file he [Meyer] would say he [Arnett] elected to take the one with the residual value"; that "he [Arnett] understood his options. I know that, because I explained them to him." Upon being further pressed by counsel for Hobbs, the witness stated "I feel sure he [Arnett] understood that it was a lease purchase." Finally, in Hobbs' Motion for Judgment Notwithstanding the Verdict of the Jury, Hobbs asserted:

"[h]is [Bruce Meyer's] testimony is uncontradicted that he explained three options to Arnett, and that Arnett elected to purchase under a so-called residual value agreement and not under a $1.00 payout agreement. It follows that the answers to Special Issue No. 15 [the jury finding that under the agreement of the parties Arnett would be entitled to the ownership of the trailers for the sum of one dollar each at the end of the leasing period] is not supported by any evidence, and the record will establish that there was never any agreement of the parties that Arnett would be entitled to ownership of the trailers for One Dollar ($1.00)."

In light of the foregoing, it is apparent that Hobbs assumed the judicial position that the options in question were available

to Arnett collaterally to and apart from the written lease agreements but that the option exercised by Arnett was the residual value option rather than the one dollar payout option. Hobbs contends the jury findings to the contrary were without support in the evidence. As to this, the trial record further discloses the following.

Arnett called James Harper as a witness. As noted above, it had been established that Harper was the Hobbs salesman servicing the Arnett account. Harper was asked what, if anything, he told Arnett about his right to purchase or retain the trailers under the leasing program of Hobbs and under these particular leases. He answered that "[T]hey were to be transferred at the end of the contract for one dollar." At this point counsel for Hobbs for the first time interposed the objection that such testimony was in violation of the statute of frauds, of Article 2.201 of the Uniform Commercial Code, "and for the additional reason that it's an effort to circumvent the contract by parol evidence." The court overruled the objection with the comment "[I]t has been completely opened." Harper thereupon further testified that Hobbs had a program with a residual value in the trailer and one termed a full-lease payout; that in his presence and in the presence of Arnett, Bruce Meyer described these alternative leasing programs to Arnett; that an order was placed at a later date "on a full-lease payout." On cross examination by counsel for Hobbs, Harper was asked about his authority as a Hobbs salesman. He replied that it was "to sell trailers . . . and to deal with the customers" and that he did not have authority to make contracts different from those prepared "in the office." On redirect examination Harper was asked about his understanding of the type of transaction "when the instrument was executed." He replied "My understanding was then and now it was a full lease payoff . . . [and] that is exactly what I told Mr. J. T. Arnett."

Later in the trial J. T. Arnett was called as a witness. Under interrogation by his counsel he testified that James Harper discussed with him the tax advantage of leasing the trailers and that the lease-purchase arrangement "was all a tax write-off." Counsel for Hobbs again objected to the testimony of Arnett as violative of the Parol Evidence Rule. The court overruled the objection with the statement that the "subject was opened up widely prior to any objections being made." Arnett further testified as follows with respect to the conference with Bruce Meyer and James Harper:

A. Bruce Meyer—he figured it up two ways. There was one way there was some kind of residual value, and there was one way a full lease payout.

Q. All right. Under either of these versions from Bruce Meyer's explanation, would you or would you not own the trailer at the end of the lease?

A. That's right. I was to own the trailer at the end of the lease.

.    .    .    .    .

Q. Was it then after your visit to Bruce Meyer that the actual lease was typed up and signed by you?

A. Yes, sir.

Q. What is your understanding of which of these two options you were leasing under?

.    .    .    .    .

A. Okay. My understanding was that I was buying this on the full lease payout, which would be a dollar option.

The purchase options established by the record to have been available to Arnett were not reduced to writing and were never intended to be formalized by a writing. The documents signed by Arnett and by Hobbs' office manager were denominated equipment leases. The parties were referred to as lessor and lessee, and Arnett was obligated to make monthly "rental payments" to Hobbs. Arnett had no right to assign the lease or sublet the trailers in question, and in addition to the provisions previously quoted the instruments provided

that upon termination of the lease "Lessee shall return said equipment to Lessor at Lessor's address."

Given these terms, it cannot be said that an oral purchase option was merely an aspect of the lease agreements. The equipment leases are fully integrated and by their provisions preclude the possibility that a purchase option could be comprehended therein. However, a purchase option considered as a separate agreement, independent and apart from the terms of the leases, is neither inconsistent with nor in derogation of such leases. An agreement by Hobbs to allow the purchase of the trailers upon expiration of the leases does not detract from the authority or enforceability of the written leases. Since the coexistence of the lease agreements and the purchase options is not disharmonious, the purchase option agreement is collateral.

Furthermore, the evidence indicated any purchase option agreement made by Hobbs and Arnett was "such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract." Restatement of Contracts § 240(b) (1932). It was established that the lease-purchase arrangements were designed to provide tax advantages for the customers of Hobbs and constituted essential aspects of the leasing program fostered by Hobbs in promoting the sale of their trailers. In *Hubacek, supra,* this Court cited the existence of other similar agreements with third parties to support the conclusion that the agreements there in question might naturally have been made by parties situated as were the parties in that case. In the instant case the evidence showed that similar purchase option arrangements were available to those who, like Arnett, possessed a certain degree of fiscal responsibility. Under these circumstances it is reasonable to conclude that a purchase option, whatever its terms, is an agreement which might naturally have been made by parties situated as were Hobbs and Arnett.

The dispute here is with respect to the terms of the collateral agreement that was made. The jury found that Hobbs agreed to convey to Arnett title to the trailers upon payment of one dollar each at the expiration of the lease periods and we hold, contrary to the contention of Hobbs, that there is evidence supporting this and the related jury findings. Harper testified he had no authority to vary the terms of the written contracts executed in Hobbs' office, but he did have authority in his capacity as a salesman to "sell trailers," to tell prospective customers of the leasing program and purchase options, and generally to "deal with customers." Case and Shumate, two former Hobbs' salesmen, also testified that as salesmen they were authorized to tell customers that under certain leases the customer could buy the trailer for one dollar upon termination of the lease. This is a situation where the appointment of a person to a position is sufficient in itself to create apparent authority. See *Rourke v. Garza,* 530 S.W.2d 794 (Tex.1975). In such cases, the authority extends only to those things ordinarily entrusted to one occupying such a position. *Id.; Shahan-Taylor Co. v. Foremost Dairies,* 233 S.W.2d 885 (Tex. Civ.App.1950, writ ref'd n. r. e.); Restatement (Second) of Agency § 27, comment a (1958). In this case Harper, as a Hobbs salesman, clearly had authority to sell trailers, and Arnett testified that Harper had in fact sold him trailers on several prior occasions. Hobbs having conferred upon Harper the authority to sell trailers, Arnett could reasonably have believed Harper had authority to negotiate the combination lease-purchase arrangements on behalf of Hobbs. Where such apparent authority exists, a third person has the same rights with reference to the principal as where the agent has actual authority. Restatement (Second) of Agency § 8, comment a (1958); *Tryad Service Corp. v. Machine Tool Center, Inc.,* 512 S.W.2d 785 (Tex.Civ.App.1974, writ ref'd n. r. e.).

As support for its no evidence contention regarding the finding of the jury that under the agreements of the parties Arnett would be entitled to ownership of the trailers upon the payment of one dollar each upon termination of the leases, Hobbs relies

on the testimony of Bruce Meyer. Meyer testified that when the final agreement was executed he explained to Arnett the two available lease-purchase arrangements and that, based on a so-called lease analysis, Arnett elected a lease under which he could pay a residual amount for the trailers at the end of the term. However, Harper, Hobbs' sales representative, and Arnett both testified that their understanding of the agreement was that Arnett could acquire title to the trailers upon termination of the lease by the payment of one dollar, and there is other evidence, noted above, which supports the finding of the jury that the actual agreement provided for a one dollar purchase option.

I would therefore hold that the purchase option was collateral to the equipment leases and was such an agreement as might naturally have been made by Hobbs and Arnett apart from and independent of the leases. Contrary to Hobbs' assertions, there is evidence to support the jury finding that the actual agreement of the parties provided that Arnett could acquire title to the three trailers upon payment of one dollar each at the expiration of the lease terms. That being true, the judgment of the Court of Civil Appeals properly awarded Arnett title to the trailers in question.

I therefore respectfully dissent.

JOHNSON, J., joins in dissent.