THREE BEARS, INC., et al., Appellants,

v.

TRANSAMERICAN LEASING COMPANY, Appellee.

No. 6632.

Court of Civil Appeals of Texas, El Paso.

Nov. 1, 1978.

Rehearing Denied Dec. 6, 1978.

Lang, Cross, Ladon, Boldrick & Green, Paul M. Green, Lawrence H. Rubenstein, James N. Martin, Law Offices of Bruce Waitz, Bruce Waitz, Van H. Johnson, Robert C. Patterson, San Antonio, for appellants.

Daniel R. Rutherford, San Antonio, for appellee.

## OPINION

OSBORN, Justice.

This case was originally decided on a procedural issue. *Three Bears, Inc. v. Transamerican Leasing Company*, 560 S.W.2d 183 (Tex.Civ.App.—El Paso 1977). That decision was reversed and the case remanded for a determination of the merits of the case. *Transamerican Leasing Company v. Three Bears, Inc.*, 567 S.W.2d 799 (Tex. 1978). We affirm in part, and in part reverse and render.

Three Bears, Inc. was engaged in operating a chain of hamburger stands in San Antonio. In February, 1972, Three Bears ordered restaurant equipment from Ray Pittman for three new locations. Transamerican Leasing Company proposed to actually purchase the equipment and then lease it to Three Bears. In May and June, 1973, Three Bears, joined by the G. S. and Gladys A. McCreless Trust, executed three leases in favor of Transamerican, each for a term of 60 months. The first and last monthly payments were made as provided for in the lease. No other payments were ever made because Transamerican was unable to obtain permanent "funding" or financing for the leases.

After Transamerican was unable to secure permanent financing, the G. S. and Gladys A. McCreless Trust guaranteed a loan from the First National Bank of San Antonio to Transamerican for $88,000.00 as interim financing. Eventually, the Trust paid the note and caused it to be assigned to G. S. McCreless.

Transamerican filed this suit against Three Bears and the Trust to recover on the three leases. Numerous defenses were alleged in answer to the suit. The case was submitted to the jury on issues covering conditional delivery of the leases, failure of consideration, damages, and attorney's fees, all of which were answered favorably to Transamerican. Judgment was entered in favor of Appellee for $109,447.76, plus interest and attorney's fees.

■ Following the entry of a judgment and the filing of an amended motion for new trial, it became apparent for the first time to the Court and counsel for Appellee that there had been no compliance with Article 7425b–19, Tex.Rev.Civ.Stat.Ann., which requires notice be given to each beneficiary of a trust prior to entry of a judgment in a suit involving a trust. Upon motion of the Appellee, the trial Court vacated the original judgment, notice was given to all beneficiaries, and a new judgment was entered resulting in this appeal.

The first three points complain of the trial Court entering judgment and not granting a mistrial because notice of the suit was not given to the beneficiaries prior to the verdict in the case. The Statute in question, Article 7425b–19, provides in part as follows:

"Whenever a trustee shall make a contract which is within his powers [1] as trustee, or a predecessor trustee shall have made such a contract, and a cause of action arises thereon:

\* \* \* \* \* \*

"B. No judgment shall be rendered in favor of the plaintiff in such action unless he proves that within thirty (30) days after the beginning of such action, or within such other time as the court may fix, and more than thirty (30) days prior to obtaining the judgment, he notified each of the beneficiaries \* \* \* of the existence and nature of the action. \* \* "

1. For purposes of discussion, it shall be assumed in considering the first three points of error that the contract is within the powers of the trustee. That issue must actually be decided under the fifth point of error.

The day after the original judgment was vacated, the trial Court entered an order directing the Clerk to issue notice to all beneficiaries of the trust, including a Guardian Ad Litem appointed to represent the interests of the minor contingent beneficiaries, notifying them of the pendency of the suit and citing them to appear and show cause why judgment should not be entered for the Plaintiff. Four of those cited, G. S. McCreless, Gladys A. McCreless, Grace Ann McCreless Durr, and Merry Christine McCreless Nielsen, the latter two being children of G. S. and Gladys, had all appeared and answered in the original suit as trustees of the Trust. Those cited for the first time were the present wife of G. S. McCreless, Effie Azalea McCreless, and four grandchildren of G. S. and Gladys McCreless, namely, Robert Gordon Durr, Kenneth Wesley Durr, Cynthia Lynn Nielsen and Carolyn Ann Nielsen, the last two being minors.

Clearly, the Statute gives the trial Court some discretion as to the requirement for notice, but does require that it be at least thirty days prior to judgment. In this case, the trial Judge ordered the notice after the verdict and then entered judgment more than thirty days after the notices were served. Thus, there technically was a compliance with the Statute. Normally, we would expect the trial Judge to require such notice be given within thirty days after suit was filed, or at least very shortly thereafter, if the notice was to have any meaning and effect.

But in this case, there was justification for the trial Court permitting notice even after the verdict. First of all, the principal beneficiaries were all participants in the case and had answered as Defendants in their capacity as trustees. In addition, all of the beneficiaries were closely related and had a common interest in the issues in litigation. All of those cited after the verdict were contingent beneficiaries. Where there is no conflict in the interest of the trustees and the beneficiaries, the trust may be represented by trustees, and the beneficiaries are bound under the doctrine of virtual representation. *Mason v. Mason,*

366 S.W.2d 552 (Tex.1963); *Smith v. Wayman,* 148 Tex. 318, 224 S.W.2d 211 (1949); *Slay v. Burnett Trust,* 143 Tex. 621, 187 S.W.2d 377 (1945). The first three points of error are overruled.

■ The next point asserts that the trustees had no power to delegate their authority to G. S. McCreless and Robert E. Durr, as attorneys in fact, to execute the leases in question. The argument presented may be a valid one. See 1 Restatement of Trusts 2d, Sec. 171 (1959); Bogert, Trusts & Trustees 2d, Sec. 555 (1960). But the fourth amended original answer filed by the trustees and upon which they went to trial does not deny under oath the authority of the attorneys in fact to execute the lease agreement as required by Rule 93(h), Tex.R. Civ.P. Instead, the answer affirmatively alleges under oath that "G. S. McCRELESS and ROBERT E. DURR, acting for these Defendants [the trustees], made and executed the three (3) leases * * *." Where the authority is not denied as required by Rule 93(h), it is admitted. *Fail v. Lee,* 535 S.W.2d 203 (Tex.Civ.App.—Fort Worth 1976, no writ). The fourth point of error is overruled.

The fifth point of error asserts error in entering judgment against the Trust because, as a matter of law, the trustees could not bind the Trust or the Trust assets as guarantor or surety for Three Bears, Inc. In connection with this point, it should be noted that the Trust was a substantial stockholder in Three Bears, Inc.

The Appellant begins its argument with the well settled principle that: "The safety of the trust fund is the first care of the law, and on this depends every rule which has been made for the conduct of trustees." *Republic Nat. Bank & Trust Co. v. Bruce,* 130 Tex. 136, 105 S.W.2d 882 (1937); *Brault v. Bigham,* 493 S.W.2d 576 (Tex.Civ.App.— Waco 1973, writ ref'd n. r. e.). The analogy is then made that a corporation has no authority to stand as a surety or guarantor for another's debt in the absence of express charter power. *L. G. Balfour Co. v. Gossett,* 131 Tex. 348, 115 S.W.2d 594 (1938);

*Rio Refrigeration Company v. Thermal Supply of Harlingen*, 368 S.W.2d 128 (Tex. Civ.App.—San Antonio 1963, no writ). It is also noted that infants are not bound on a suretyship agreement, and at one time the same rule applied to married women. *Walker v. Stokes Bros. & Co.*, 262 S.W. 158 (Tex.Civ.App.—Austin 1924, no writ); *Red River Nat. Bank v. Ferguson*, 192 S.W. 1088 (Tex.Civ.App.—Texarkana 1917), aff'd, 109 Tex. 287, 206 S.W. 923 (1918). Thus, the argument is made that surely such limitation of power must exist with regard to trustees, particularly where there is no express grant of such power.

■ The Appellee urges that such power does exist and relies upon the Texas Trust Act, and particularly Article 7425b–25, paras. E and J. It also relies upon certain provisions of the trust agreement including Subparagraph K, which authorizes the borrowing of money. Our reading of the trust agreement and the Texas Trust Act does not disclose any express grant of authority to trustees to act as sureties or guarantors for the debt of another. First, with regard to the powers under the trust agreement itself, Subparagraph K provides as follows:

"K. To borrow money (from itself individually or from others), upon such terms and conditions as it may determine and to mortgage and pledge estate and trust assets as security for the repayment thereof; and to lend trust funds, on such terms and conditions as the Trustees may determine, to any beneficiary of the Trust, in an amount not exceeding the pro rata beneficial interest in the trust corpus of such beneficiary."

The transaction in question with Transamerican Leasing Company did not involve a loan but three leases which were guaranteed by the Trust. Clearly, Subparagraph K does not provide any express authority to the trustees to enter into an agreement as guarantor or surety on behalf of the Trust. Insofar as some of the stock in Three Bears, Inc., was owned by third parties, there would be no benefit to the Trust in guarantying the leases made by Three Bears, Inc. Such a guaranty agreement could be, and in this case was, detrimental to the interest of the beneficiaries of the Trust. Insofar as the trustees may have a direct interest in the lease, it should be noted that it would be contrary to the public policy of this State to permit the language of a trust instrument to authorize self-dealing by a trustee. *Langford v. Shamberger*, 417 S.W.2d 438 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n. r. e.).

■ With regard to the Texas Trust Act, Paragraph E only gives the trustee the right to contest or settle claims against the trust. It has no application to the facts of this case. Paragraph J provides:

"The powers, duties, and responsibilities stated in this Act shall not be deemed to exclude other implied powers, duties, or responsibilities not inconsistent herewith."

In considering implied powers, it must be noted that a trustee may not use his position to obtain any advantage inconsistent with his primary duty to the beneficiaries. *MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d 334 (1944). Likewise, trustees cannot make a profit from the trust funds committed to them by using the money of the trust in their own business. *Slay v. Burnett Trust*, supra.

The facts in this case are somewhat similar to those in *State of California v. Larkin*, 413 F.Supp. 978 (N.D.Cal.1976). In that case, a trust executed a loan guaranty to secure a loan in favor of one of the grantors of the trust. The evidence established that if the business of the grantor was successful, there would be additional funding of the trust. The Court concluded that the deed of trust given to secure the loan guaranty upon the real estate owned by the trust constituted a breach of trust, and that it made no difference that the trustees had acted in good faith in guarantying the loan. The net effect of the holding in the case is that the loan guaranty and deed of trust did not place a valid lien upon the trust assets. Following that case, we reach the same results and hold that the lease agreement guaranteed by the trustees did not bind the Trust assets. The fifth point of error is sustained.

The sixth point asserts error in entering judgment against the Trust because it is asserted a trust, as an entity, cannot be sued. The contention made is a correct one, but the point has become moot because of our having sustained Point of Error No. 5. Regardless of that, answer was filed, not by the Trust, but by the four trustees, and judgment has been entered against the four trustees in their capacities as trustees of the Trust, as well as against the Trust itself. Therefore, we find no reversible error insofar as the form of the judgment is concerned, and the point of error is overruled. See *Price v. Estate of Anderson*, 522 S.W.2d 690 (Tex.1975).

■ The next three points assert the trial Court erred in sustaining a motion in limine and thereby excluding evidence and defenses asserting that the leases were in fact purchase agreements and that the payments included usurious interest. It is asserted, and evidence was offered by bill of exception to show, that there was an oral agreement that at the end of the leasing term, Three Bears, Inc. could pay a ten percent option figure and purchase the leased equipment. Appellants contend that the equipment cost Transamerican approximately $88,000.00, and the difference between that amount and the lease payments of about $174,000.00 was usurious interest and finance charges on equipment being sold under a purchase option. The three lease agreements are on printed forms and each provides that "[t]his Lease constitutes the sole agreement of the parties with respect to the subject matter thereof, may not be changed or modified except in writing * * *." There is nothing in the agreement to indicate or suggest a sale of the described property, an option to purchase, or anything other than a lease of the listed property. The basic provisions of the parol evidence rule are embodied in Section 2.202 of the Texas Business & Commerce Code. We believe those provisions prevent the introduction of evidence to change the clear language of a lease into an option sales agreement. *Santos v. Mid-Continent Refrigerator Company*, 469 S.W.2d 24 (Tex. Civ.App.—Corpus Christi), writ ref'd n. r. e.,

471 S.W.2d 568 (Tex.1971); *Chaplin v. Milne*, 555 S.W.2d 161 (Tex.Civ.App.—El Paso 1977, no writ).

■ The cases upon which Appellants rely, *Davis Brothers v. Misco Leasing, Inc.*, 508 S.W.2d 908 (Tex.Civ.App.—Amarillo 1974, no writ); *First National Bank of Fort Smith, Arkansas v. Phillips*, 261 F.2d 588 (5th Cir. 1958); and *Beckwith Machinery Co. v. Matthews*, 57 A.2d 796, 175 A.L.R. 1360 (Md.1948), are all cases in which there was a written instrument, either the lease agreement itself or a letter, to reflect the right to purchase, and no oral evidence was required to establish the right to purchase. Thus, the determination by those Courts to consider the real intent of the parties was not the result of oral evidence which would engraft new terms on an express written agreement. We conclude those cases are not applicable in this case where there is no writing reflecting a right to purchase, and we decline to give them any application in this case. Points of Error Nos. 7, 8, and 9 are overruled.

■ The Appellants' next fourteen points of error attack the jury findings on conditional delivery of the leases, failure of consideration and damages, with points of error asserting "no evidence," "insufficient evidence," and "against the great weight and preponderance of the evidence." In passing on the "no evidence" points, we have considered only that evidence favorable to the jury's verdict, and on the other points we have considered all of the evidence. Certainly, the evidence is in great conflict. Witnesses for Appellants testified as to representations concerning the requirement that permanent funding was necessary for the leases to be valid and binding. Witnesses for Appellees denied such representations and even said they thought the loan obtained at the First National Bank in San Antonio constituted funding for the leases. At the same time, they admitted that the thirty-day note was not permanent but a temporary arrangement. Payments were made on the leases the last of May and the first part of June,

1972, when the kitchen equipment was accepted. Apparently, no conditions were placed upon those payments, and at that time apparently everyone considered the leases valid. At a meeting in September, everyone involved with the lease problems was concerned about financing and lease payments, but apparently everyone recognized the leases as valid. With regard to the damages, the jury answered Issue No. 5 to the exact penny as calculated and testified to by Mr. Dailey, President of Transamerican Leasing Company. His calculations were based on the total payments provided for in the leases, less payments made in May and June and the amount paid by the Trust on Transamerican's note at the First National Bank. No question is raised as to whether or not the measure of damages as submitted to the jury is a proper one, and we do not pass on that question. We conclude that there is some evidence to support the jury's answers to Special Issues Nos. 1, 2, and 5, and Points of Error Nos. 10 through 23 are overruled.

The next three points of error complain about rulings of the trial Court concerning admission of evidence. We conclude that the points do not present reversible error under Rule 434, Tex.R.Civ.P., and they are overruled.

■ Points of Error Nos. 27 and 28 complain about the award of attorney's fees. In accordance with the jury findings, the Court awarded attorney's fees in the amount of $18,810.00, plus the additional sum of $3,500.00 for attorney's fees in connection with any appeal to the Court of Civil Appeals, and $2,500.00 attorney's fees for services in connection with any appeal to the Supreme Court of Texas. The lease provides that if lessee fails to make payments when due, lessee's right to possession of the leased property shall cease. It then provides that upon repossession of the leased property, the lessor shall have the right to rerent or sell the leased property, and in either event recover an attorney's fee of fifteen percent. Obviously, such clause for attorney's fees contemplates the amount being based upon a deficiency after

disposition of the leased property. In this case, the Appellee did not comply with the lease provision providing for repossession of the leased property and then either rerenting or selling the leased equipment. Instead, suit was brought for the total amount of the lease payments provided for in the lease agreement. We conclude that the Appellee may not recover attorney's fees under a written contract when the conditions precedent (repossession of the leased property and rerenting or sale of the same) to the recovery of such attorney's fees have not been complied with. Thus, we sustain Point of Error No. 27. If we should be in error in such holding, then we would sustain Point of Error No. 28 and hold that the maximum amount of attorney's fees that could be recovered would be fifteen percent of the sum of $109,447.76 awarded as damages, and any fee awarded in excess of $16,417.16 is excessive, but such error can be cured by a remittitur. If it should be determined on further appeal that we are in error in sustaining Point of Error No. 27, and the case remanded for a consideration of Point 28, we would sustain that point and order a remittitur.

■ The last three points of error assert the trial Court erred in ruling on contentions presented by Appellants that the three leases are unconscionable under Section 2.302 of the Texas Business and Commerce Code. This provision of the Code relates to contracts or any clause of the contract found to be unconscionable. But Section 2.106 provides that "contract" and "agreement" are limited to those relating to the present or future sale of goods. Thus, we conclude that Section 2.302 has no application to this lease agreement which did not involve a sale. See Harrington, "Unconscionability Under the Uniform Commercial Code," 10 S.Tex.L.Jr. 203, 212–213 (1968). Points of Error Nos. 29, 30, and 31 are overruled.

The judgment against the G. S. and Gladys A. McCreless Trust, and G. S. McCreless, Gladys A. McCreless, Grace Ann McCreless Durr, and Merry Christine McCreless Nielsen, in their capacities as

trustees of the said G. S. and Gladys A. McCreless Trust, is reversed and rendered. The judgment against Three Bears, Inc. for the sum of $109,447.76 with interest is affirmed. The judgment against Three Bears, Inc. for attorney's fees in the amount of $18,810.00, plus the additional sums of $6,000.00 in the event of certain appeals, is reversed and rendered. That part of the judgment awarding Robert C. Patterson guardian ad litem fees against Three Bears, Inc. is affirmed, and that part of the judgment awarding such fees against G. S. McCreless and Gladys A. McCreless Trust, and G. S. McCreless, Gladys A. McCreless, Grace Ann McCreless Durr, and Merry Christine McCreless Nielsen, in their capacities as trustees of said G. S. and Gladys A. McCreless Trust, is reversed and rendered.

All costs are taxed against Three Bears, Inc., and if the guardian ad litem fees are not collected from such Defendant, the same shall be taxed against and paid by the Appellee, Transamerican Leasing Company.