**U.S. ARMAMENT CORPORATION,**
Appellant,

v.

**CHARLIE THOMAS LEASING
COMPANY and Friendly
Finance, Inc., Appellees.**

No. 01–83–0115–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 22, 1983.

Rehearing Denied Dec. 8, 1983.

**198**

Carolyn Pearson, Alan Steber, Edwin Kirkpatrick, Houston, for appellant.

William Green, Houston, for appellees.

Before EVANS, C.J., and BULLOCK and LEVY, JJ.

## OPINION

BULLOCK, Justice.

Appellant appeals from an order of the trial court granting appellees' motion for summary judgment.

The judgment is affirmed.

Appellant sought damages on a breach of warranty theory pursuant to its acquisition of two 1977 Rolls Royce Corniche motorcars, one from each of the appellees.

Appellant argues in its single point of error that the trial court erred in granting summary judgment in favor of appellees because material issues of fact exist as to whether the contracts executed by the parties are subject to the warranty provisions of the Texas Business and Commerce Code.

In 1977, appellant decided to acquire two Rolls Royce motorcars for the use of its principal officers. It subsequently obtained the motorcars, one from appellee, Charlie Thomas Leasing Co., and the other from appellee, Friendly Finance Inc.

### A. THE CHARLIE THOMAS LEASING TRANSACTION

In response to an advertisement in the Wall Street Journal placed by appellee, Charlie Thomas Leasing Company, an officer of the appellant corporation made contact with appellee's finance manager concerning the ad which advertised a Rolls Royce Corniche as available for leasing. The negotiations of the parties resulted in a lease agreement; however, the precise nature of this agreement is not only disputed by the parties, but forms the basis of appel-

lant's claims before the trial court and on this appeal.

Under the agreement of November 3, 1977, appellant, on December 27, 1977, made a down payment of $5,807.19 on the motorcar. In January of 1980, appellant took possession of the Rolls and began making the monthly payments as required by the lease agreement. Shortly thereafter, appellant allegedly began to encounter mechanical and structural problems and it contacted appellee to expedite the repair of the vehicle, which was apparently under a full factory warranty with the Rolls Royce Motor Co. However, when neither appellee nor the Rolls Royce Motor Co. repaired the vehicle to appellant's satisfaction, appellant refused to make further monthly payments, and as a result, appellee repossessed the motorcar and sold it to a third party.

### B. THE FRIENDLY FINANCE TRANSACTION

Shortly after entering into the first agreement, appellant entered into a second agreement with appellee, Friendly Finance Inc., for the acquisition of a second Rolls Royce Corniche motorcar. Again the precise nature of this agreement is disputed by the parties. On November 23, 1977, a lease agreement was signed whereunder appellant made a $15,000 down payment for the acquisition of the vehicle.

As with the first transaction, appellant allegedly discovered numerous mechanical and structural defects in the motorcar. Neither Friendly Finance nor the Rolls Royce Motor Co. repaired the second vehicle to appellant's satisfaction, and although a full factory warranty with the Rolls Royce Motor Co. was apparently still in effect, appellant stopped making the required monthly payments. The second motorcar was then repossessed by appellee and sold to a third party.

Appellant filed suit against the Rolls Royce Motor Co., Charlie Thomas Leasing Co., and the Friendly Finance Inc. on a breach of warranty theory, praying for damages in excess of $50,000. Appellees

successfully moved for a summary judgment based on the proposition that all warranties have been effectively disclaimed by the lease agreements.

Appellant, urging its one point of error relating to the existence of material issues of facts, presents three arguments:

A. Lease transactions which are analogous to contracts for the sale of goods are subject to the warranty provisions of the Texas Uniform Commercial Code.

B. The plaintiff presented evidence from which the jury could have found that the contracts executed by the parties are analogous to contracts for the sale of goods and, therefore, are subject to the Code's warranty provisions.

C. The parties' oral agreements pertaining to the plaintiff's purchase options may be considered by this court without violating the parol evidence rule.

Preliminarily, the situation is this: If the two transactions are considered pure leases, appellees effectively disclaimed all warranties incident thereto; if, on the other hand, these transactions are subject to Article 2 of the Texas Uniform Commercial Code, the warranties have not been effectively disclaimed pursuant to the Code provisions.

Focusing momentarily on the latter proposition, § 2.316 of the Texas Business and Commerce Code provides that the implied warranties of fitness and merchantability can be properly disclaimed as follows:

(b) Subject to Subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

(c) Notwithstanding Subsection (b)

(1) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

(2) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

(3) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

Tex.Bus. & Com.Code Ann., § 2.316(b) and (c) (Vernon 1968).

The agreements disclaimed, or attempted to disclaim, depending upon the interpretation of the transaction, warranty liability as follows:

The Charlie Thomas Agreement:

6. *Maintenance and Repairs.* At its own expense (except as covered by insurance or manufacturer's warranty) Lessee shall maintain the Vehicle in good working order and condition, properly serviced and greased, and shall make all necessary repairs and replacements. Title to all replacements shall vest in Lessor.

\* \* \* \* \* \*

16. *Force Majeure and No Consequential Damages.* Lessor shall not be liable for any failure or delay in delivering the Vehicle, or in performing any provision hereof, due to fire or other casualty, labor difficulty, governmental restriction or any cause beyond Lessor's control. In no event shall Lessor be liable for any loss of profits, other consequential damages or inconvenience to any theft, damage, loss, defect or failure of the Vehicle or the time consumed in recovering, repairing, servicing or replacing the same, and there shall be no abatement or apportionment of rental during such time.

The Friendly Finance Agreement:

8. *Warranties and Representations:* Lessor hereby assigns to Lessee for the term of this lease all of its interest in any manufacturer's or vendor's warranty or guarantee in respect of the equipment.

Lessee acknowledges that Lessor is not a manufacturer, vendor, or dealer, that Lessee selected the equipment and that Lessee's dissatisfaction with any item of equipment or failure of any item of equipment or failure of any item of equipment to remain in useful condition for the full term of the lease shall not release the Lessee from its obligations hereunder. Lessor makes no representation or warranties, expressed or implied, as to any item of equipment other than to title. Lessee acknowledges that Lessor has made no representation or warranties as to the condition, quality, performance, suitability, durability, maintenance or service of or for any item of equipment.

It is, therefore, apparent that neither agreement effectively disclaimed the implied warranties of merchantability and fitness because the provisions are not in conspicuous type, do not mention "merchantability," or otherwise satisfy the requirements of § 2.316(c), *supra.* Thus, it appears that appellant would have a viable cause of action against both appellees *if* the agreements were subject to the Code's warranty provisions. Recognizing, however, that whether or not a lease agreement is subject to Article 2 of the Texas Uniform Commercial Code arguably presents a genuine issue of material fact precluding a summary judgment, such a judgment would be proper only if the trial court could conclude, as a matter of law, that the agreements were not subject to the Code's warranty provisions.

Appellant cites this court to many cases wherein courts of foreign jurisdictions have held particular lease agreements to be subject to Article 2. *See,* generally, Annot., *"Application of Warranty Provisions of the U.C.C. to Bailments",* 48 A.L.R.3d 668 (1973). The proposition which underlies these foreign opinions appear to be that the Code's warranty provisions should apply whenever the lease transaction is "analogous to the sale of goods". Appellant has gone to great lengths in summarizing these foreign opinions in its well written and reasoned brief. However, it fails to cite any Texas cases or other authoritative declaration binding on this court holding that these transactions would be subject to the Code's warranty provisions if the transaction is "analogous to a sale."

Texas courts have consistently refused to apply the warranty provisions of the Code to lease transactions. *Three Bears, Inc. v. Transamerican Leasing,* 574 S.W.2d 193 (Tex.Civ.App.—El Paso 1978, no writ); *Hobbs Trailers v. J.T. Arnett Grain Co., Inc.,* 560 S.W.2d 85 (Tex.1978); also see *O.J. & C. Company v. General Hospital Leasing, Inc.,* 578 S.W.2d 877 (Tex.Civ.App.—Houston [14th Dist.] 1979).

In *Three Bears, supra,* the lessor asserted, as does appellant, that the leases were purchase agreements. In refusing to apply the Code to the leases the Court stated: "There is nothing in the agreement to indicate or suggest a sale of the described property, an option to purchase, or anything other than a lease of the listed property." Similarly, nothing in either the Charlie Thomas lease nor the Friendly Finance lease indicated the existence of a lease-purchase agreement. In *Hobbs, supra,* the Texas Supreme Court recognized that where the contract was denominated a "lease", designating the owner as "lessor" and the party acquiring the leased chattel as "lessee", the latter agreeing to pay "rental payments", the transaction was a lease and not a sale.

The Charlie Thomas lease agreement provided, in relevant part:

7. *Lease Only:* This agreement is one of leasing only and lessee shall not have or acquire any right, title or interest in the vehicle except the right to use the same as provided in this agreement.

Further, both lease agreements failed to mention the existence of any lease-purchase agreement, but rather were referred to as being "leases" and used the terms "leased", "lessor", and "lessee" numerous times as was the case in *Hobbs, supra.*

We note that both agreements provided that the lessor may repossess the leased chattel upon the lessee's default (i.e., the failure to pay the monthly rental payments). In this respect, any option to purchase upon the expiration of the term of the lease would have been conditioned upon the satisfaction of all payments due on the lease. Since the lease itself had not been satisfied, a subsequent sale could never be realized.

Appellant also urges that the jury could have considered prior parol agreements to the effect that the parties intended a lease-purchase agreement as opposed to a pure lease agreement. Sufficient parol evidence exists to reach such a conclusion, but appellant's contention is not based on applicable Texas cases.

In *Hobbs, supra,* the Texas Supreme Court refused to allow any parol evidence reflecting an alleged purchase option to contradict the lease terms. There, the lease agreement provided for 60 monthly rental payments, and testimony, subsequently viewed by the Court as inadmissible, was introduced establishing that the lessee would purchase the leased chattels upon payment of $1.00 at the expiration of the 60 rental payments. Similarly, with respect to the case presently before this court, an offer of evidence by appellant contradicting the lease agreements with allegations of a lease-purchase agreement would be entirely inadmissible as violative of the parol evidence rule. *Hobbs, supra.*

Appellant attempts to point out an ambiguity in the Friendly Finance lease in an effort to circumvent the operation of the parol evidence rule; that is, the reference in that lease to a $15,000 down payment, according to appellant, "obviously connotes a lease—purchase or sale rather than a pure lease." Appellant cites no authority for this proposition. An initial cash payment of $15,000 on a lease requiring payment of sums totaling $105,932.40, would not be considered unusual, and the sentence in the lease, "*Lease* figures apply after $15,000 down payment" tend to refute appellant's

assertion that the transaction was something other than a lease.

Appellant's sole point of error is overruled and the trial court's judgment is affirmed.